IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.: 2:21-CV-00080-JRG-CRW |
| WALGREEN CO., | : : | |
| Defendant. | : : : : | |

**NON-PARTY MAGELLAN MEDICAID ADMINISTRATION, INC.'S REPLY IN SUPPORT OF MOTION TO ALLOCATE COST**

Magellan Medicaid Administration, Inc. ("Magellan"), a non-party to the above-styled action, respectfully states as follows in further support of its Motion to Allocate Costs (the "Motion") and in reply to the Opposition Briefs submitted by Plaintiff State of Tennessee (the "State") and Defendant Walgreen Co. ("Walgreens").

**INTRODUCTION**

Non-party Magellan finds itself in a unique and unenviable position that requires the Court's assistance. Walgreens insists that regardless of the time period or nexus to Magellan's former contract with the State, Magellan stands in the shoes of the State for purposes of *all* discovery; and, as such, Magellan must search, review and produce electronically stored information ("ESI") at its own cost in response to Walgreens' Request for Production of Documents ("RFPs") issued to the State. At the same time, Walgreens takes the contradictory position that Magellan should not be afforded any of the protections given to non-parties, or even parties, under the very same rules, and insists that Magellan must rely on the State (a party with

06351180.3

1

whom it no longer has any financial, contractual, or agency relationship) to protect its interests. The course of the litigation has shown that Magellan could not rely on the State to reduce its burden. The State neither negotiated the scope of discovery on Magellan's behalf nor offered to pay for it. Instead, the State largely played the role of spectator while Magellan incurred substantial costs trying to narrow Walgreens' RPFs so that it could discharge the *State's* discovery obligations.

Although the unique posture of the case makes it somewhat difficult to fit Magellan's request for cost-shifting into a neat procedural box under Rule 26, basic fairness dictates that Magellan should not be required to pay substantial e-discovery costs *plus* attorneys' fees simply because it was under contract with the State during the time period at issue. This Court has recognized Magellan's unique position as a non-party, as well as the potential for cost shifting during multiple discovery-related hearings. Rule 26(c) provides this Court will ample authority to protect Magellan from undue burden. Magellan's proposal to cover <u>more than one-third</u> of the total projected e-discovery costs in addition to its own attorneys' fees is more than reasonable. In contrast, the State and Walgreens' repeated, respective positions that they should bear none of the costs are not. Accordingly, the Court should adopt Magellan's proposal, cap its costs in responding to Walgreens' RFPs at $62,000, and allocate all further ESI costs between the State and Walgreens.[1]

---

[1] Walgreens' asserts that Magellan's statement of facts contains "two factual inaccuracies that require correction." ECF 107 at 4. First, in response to Magellan's contention that it did not receive Walgreens' revised search terms until December 20, 2020, Walgreens attaches an email demonstrating that the revised search terms were sent to the State on November 8, 2020 as well as an email from the State dated December 20, 2020 advising that those search terms were "previously forwarded to Magellan." ECF 107 at 5; 107-2 at Ex. E and F. Walgreens argues that the State either failed to timely send the revised search terms to Magellan or Magellan received the revised search terms at an earlier date and failed to act on them. *Id*. Magellan's reference to the search terms received on December 20, 2022 was a typographical error. In actuality, Magellan did not did not receive Walgreens' revised list of search terms <u>tailored specifically to Magellan until December 22, 2021</u>, two days after the parties' December 20, 2021 meet and confer. *See* ECF 100-1 at Ex. H, p. 45. Remarkably, Walgreens' December 22, 2021 e-mail providing the Magellan specific search terms advised that Walgreens was "deeply concerned about the delays to date in searching for responsive Magellan email data" and that if "further delays" were encountered they would be brought to the Court's attention. *Id.* It is difficult to understand how Walgreens expected Magellan to search for responsive email data prior to receipt of Walgreens' Magellan specific search terms. Walgreens also takes issue with Magellan's statement that Walgreens was

**ARGUMENT**

**A.   The State is the Responding Party and, by Default, Should Bear Some of Magellan's Costs.**

In its Response, the State wholeheartedly agrees that Magellan should not have to bear the full cost of responding to Walgreens' RFPs and cost shifting is appropriate; it simply argues the costs should shift to Walgreens. While the State is correct that Walgreens arguably should bear a portion of the cost (particularly for its initial overly-broad requests), as detailed more fully below, Walgreens is perhaps more correct that the "foundational 'presumption' in civil discovery [is] 'that the responding party must bear the expense of complying with discovery request.'" *See* Walgreens' Response at 1, citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). The State's failure to take any responsibility for Magellan's cost to produce documents on its behalf was initially understandable given the State's steadfast position that it was not in "possession, custody or control" over Magellan's ESI and could not order Magellan to do anything. The State's Response does not address the State's failure to negotiate the scope and time-frame of the requests at the objection stage, or its failure to move the Court for clarification regarding the State's lack of contractual authority to compel Magellan to produce documents before the parties reached the motion to compel stage.[2] Had the State done *any* of these things, Magellan may have avoided

---

"unwilling to comprise" on the date ranges of its discovery request until after the February 17, 2022 hearing. ECF 107 at 5. Walgreens' position is meritless for the reasons discussed on page 8, *supra*.

[2] Walgreens argues that Magellan should not be permitted to shift costs to it "in light of the significant and avoidable costs that Walgreens has incurred in trying to get the State to comply with its discovery obligations…" ECF 107 at 3. As an example, Walgreens references the "State's and Magellan's unreasonable and frivolous argument –that Magellan was not the State's agent in this case – which this Court rejected." *Id*. But Magellan had no control over how the State raised the issue of its contractual relationship with Magellan or how the State articulated the agency argument. Magellan has never insisted that it is not the State's agent for any purpose in this case; it has simply insisted that it is not the State's agent for *every* purpose or for *every* discovery request, particularly those requests seeking internal emails pre-dating (2010-2012) and post-dating (2020-2022) Magellan's contract with State. Magellan never had the opportunity to argue this position to the Court or to distinguish the case law on which Walgreens relies before the Court began referring to it in Orders as the State's agent. Walgreens cannot have its cake and eat it too; it cannot argue that Magellan must rely on the State to make its arguments but that it also must be punished when the State fails to adequately do so.

06351180.3                                                           3

involvement in multiple Motions to Compel and incurring now sunk cost for ESI ingestion and processing.

### B. Walgreens Should Also Bear Some Costs.

In its Response, Walgreens appears to concede, at least in spirit, that cost shifting may be appropriate, but contends that costs should be shifted to the State rather than Walgreens. Walgreens' arguments are based on an overly technical reading of Rule 26, and its insistence that Magellan advocate for cost shifting like a party is misplaced. Walgreens also wrongly minimizes its responsibility for Magellan's discovery cost.

#### 1. Walgreens' RFPs are overly broad and not reasonably limited in time and scope.

Walgreens suggests that cost-shifting is inappropriate because its RFPs seek relevant and necessary information. Although *some* of the information sought is undoubtedly relevant and necessary, Walgreens has yet to explain why it initially demanded emails during years (2010-2012, 2020-2022) when Magellan was not even serving as the State's PBA as well as during years (2013, 2017-2019) when no false claims were alleged to have been submitted. Walgreens has also failed to address why it insisted on ingesting years of data for multiple reviewer custodians (rather than limited data so that responsiveness could be tested) even after Magellan explained that prior authorization custodians rarely worked via email and were unlikely to have responsive information.[3] By the time Walgreens finally agreed to limit the relevant time-frame, Magellan's vendor had already ingested and processed, at significant expense, a voluminous amount of data that will never be reviewed. This weighs in favor of some cost shifting to Walgreens. *Medtronic*

---

[3] Walgreens argues that Magellan's emails are relevant to any assessment of the materiality of the falsity, but Magellan has always contended that the best evidence of whether PA criteria were strictly applied or not would be found in the actual claims documentation that Walgreens has already had for months.

06351180.3     4

*Sofamor Danek, Inc. v. Michelson*, 229 F.R.D. 550, 554-55 (W.D. Tenn. 2003) (finding requesting parties' failure to limit its request by date weighed in favor of them bearing cost of production).

### 2. Walgreens' RFPs are not proportional to the needs of the case.

Walgreens argues that its RFPs are proportional because the amount in controversy is $28 million, Magellan's "maximum cost burden" is $167,674.98, the ESI sought is "uniquely in Magellan's possession," and Magellan should have somehow anticipated the costs based on serving as a PBM (ECF 107 at 8-9). This argument against cost shifting fails for a number of reasons.

First, Walgreens' RFPs were issued to the State, not Magellan. The fact remains that Magellan is not a party to this lawsuit and the State has already conceded that it has no right to possession, custody, or control over Magellan's emails and has no power under its former contract to order Magellan to do anything. Therefore, while Walgreens' potential exposure in this case may be relevant to the scope of discovery, it has no bearing on whether a <u>non-party</u> should bear the burden of significant discovery costs. The protections of Rule 45 should be afforded to Magellan, including protection from "significant expense" resulting from compliance with a discovery request. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).

Second, Magellan's "maximum cost burden" is not capped at $167,674.98 because that figure (1) excludes Magellan's legal fees and (2) presumes that Walgreens will not expand the search terms and number of custodians as e-discovery progresses – something Walgreens has explicitly "reserved the right" to do. Magellan seeks to shift future costs, in part, to incentivize the parties to narrow and focus their ESI requests.

Third, the bulk of the information sought by Walgreens is not "uniquely" in Magellan's possession.[4] Rather, a substantial amount of the ESI requested by Walgreens involves communications between Magellan and the State, particularly ESI regarding the underlying investigation and the prior authorization criteria. *See* Motion to Compel, Doc. 45, 45-1 (Request Nos. 18-20). Magellan should not be required to subsidize the production of documents and information that should be in the possession of the State.

Finally, Magellan should not be required to pay these costs because it should have "anticipated" them by contracting with the State. Magellan is well aware that when it contracts with a party, it may be dragged into litigation initiated by that party. That is why Magellan makes provisions in its contracts to address document production and costs. Here, Magellan had an ongoing obligation during the pendency of the contract to provide litigation assistance to the State, but that obligation ended at the conclusion of the contract. Magellan did not anticipate and could not anticipate that a third-party would be granted access to its *internal* email spanning twelve years without issuance of a subpoena (and related protections under Rule 45). Magellan should not be punished for failing to anticipate this highly unique situation. And Magellan should not be punished for cooperating with Walgreens and the State instead of refusing to produce the ESI at all, which would have been well within its rights to do in the absence of a subpoena.

### 3. Magellan does not have to demonstrate the discovery is reasonably inaccessible to shift costs.

Walgreens argues that cost-shifting is inappropriate unless Magellan can demonstrate that the ESI at issue is "not reasonably accessible" pursuant to Rule 26(b)(2)(B). (ECF 107 at 10). This argument, however, ignores the current state of technology and the fact that Magellan's motion is

---

[4] Magellan notes Walgreens' now-convenient claim that "the documents sought are exclusively within Magellan's possession, custody, and control" when just a mere four months ago, it argued in front of this very Court that the documents sought were also in the "possession, custody, and control" of the State.

based upon Rule 26(c). Rule 26(c) "was amended in 2015 to make clear that the court may allocate discovery expenses for good cause in order to protect a party from undue burden or expense." *Lawson v. Spirit Aerosystems, Inc.*, 2020 WL 3288058 *8 (D. Kan. June 18, 2020). The issue now is not solely whether data is technically accessible, but also the volume of the data at issue, the associated burden and cost to search it, and whether costs should be shifted. *Id*. at 8-9.

Although Walgreens attempts to characterize *Lawson* as an outlier decision, district courts across the country have held that cost-shifting is <u>not</u> limited to inaccessible data. *See N. Shore-Long Island Jewish Health Sys, Inc. v. Multiplan Inc.*, 325 F.R.D. 36, 51-53 (E.D.N.Y. 2018) (inviting briefing on shifting the costs of production for accessible data reports); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co*., 322 F.R.D. 1, 11 (D.D.C. 2017) (noting that courts have, over the years, "looked beyond accessibility to determine whether to shift discovery costs" and that Rule 26 was amended in 2015 to reflect this); *United States ex rel. Carter v. Bridgeport Educ. Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("[C]ost shifting has been extended beyond merely inaccessible ESI."); *FDIC v. Bowden*, 2014 WL 2548137, at * 6 (S.D. Ga. June 6, 2014) ("'inaccessible' … can mean prohibitively expensive."). Therefore, even if Magellan were a party to this action, its ability to access the ESI sought would not foreclose cost-shifting.

### 4. Magellan has demonstrated that producing the requested discovery would impose an undue burden.

Walgreens maintains that Magellan cannot shift any costs to "<u>*Walgreens*</u> without showing that those costs would impose an undue burden on the *State*." ECF 107 at 11 (emphasis in original). Not surprisingly, Walgreens does not cite any authority in support of its position. Regardless of how Magellan is characterized (a party, a non-party, or "standing in the shoes" of a party), Walgreens' RFPs clearly impose undue burden and costs on Magellan, and this Court has broad discretion to craft appropriate relief under Rule 26(c).

Walgreens argues that Magellan's anticipated discovery costs "pale in absolute terms in comparison to what the State has faced in other cases" including *John B. v. Goetz*. (ECF 107 at 12). Although that may be true, it is equally true that the costs and fees incurred by the non-party managed care organizations ("MCOs") in *Goetz* were ultimately shifted to either the State or the Plaintiffs. *See John B. et al v. Goetz, et al.*, No. 3:98-cv-00168 (M.D.T.N.) at ECF 1339, 1349-1361.[5] The Court in *Goetz* entertained cost and fee shifting despite the fact that the MCOs, in contrast to Magellan, had existing contracts with the State. *John B. v. Goetz*, 879 F. Supp. 2d 787, 857-859 (M.D. Tenn. 2010). Consequently, *Goetz* supports Magellan's argument that, at the very minimum, further costs associated with ESI should be allocated to the State and/or Walgreens.

Walgreens also argues that it did not cause Magellan to incur increased costs by refusing to negotiate the expansive time-frame for the proposed search prior to the February 17, 2022 hearing. ECF 107 at 5, 12. According to Walgreens, while "reserving all rights," it was willing to start with more limited time-frames for the prior authorization custodians and potentially limit searches for certain custodians that Magellan believed were unlikely to have responsive information post-dating the termination of Magellan's contract with the State. *Id*. Walgreens misses the point. Although Walgreens suggested a willingness to narrow the time-frame of the searches, it insisted that the data for these custodians (from January 2010 to present) be processed and available to be searched. *See* ECF 101-1, Ex. H at p. 37-38 (January 19, 2021 email from M. Dziuban to J. Collins, et. al.). Because Walgreens insisted that all email data during the expansive time-frame be available to search, Magellan was required, at significant cost, to engage a vendor

---

[5] The docket sheet in *Goetz* indicates that the MCOs submitted briefs seeking to allocate the costs of discovery to the parties in the case. *John B. v. Goetz,* No. 3:98-cv-00168, at ECF 897, 902-903, 911, 921, 935, 946. The Court entered a sealed Order on January 14, 2010 and all of the MCO's submitted sealed applications for fees and costs in response to that Order. *See* ECF 1339, 1349-1361. The Court's decision regarding the allocation of fees and costs is not publicly available.

to retrieve, ingest, and host within its platform, over 1 Million documents just for the first 13 custodians. ECF 100, p. 5-6. Similarly, although Walgreens correctly notes that the first 13 custodians continue to be among the custodians the parties have agreed to search, Walgreens ignores the fact that Magellan processed data for these custodians that will never be reviewed.

Walgreens also claims that Magellan's cost estimate "remains significantly higher than necessary" because human reviewers will review "all" documents that hit on search terms. ECF 107 at 13. This is simply untrue. The number of documents subject to manual review will be significantly reduced through Magellan's use of TAR. However, because Walgreens has not agreed to include "TennCare" or similar qualifiers in all of its search strings, it is anticipated that a significant number of documents that hit on Walgreens' search terms will include PHI/PII and substance abuse disorder treatment records covered by 42 CFR Part 2 for patients/members in plans <u>other than TennCare</u> as well as documents and communications that are governed by confidentiality agreements with Magellan's other clients. Magellan is legally obligated to maintain the confidentiality of this information notwithstanding the Protective Order or any 502(d) stipulation proposed by Walgreens.[6]

### 5. Magellan is not "the central and key non-party" in the case and should not bear costs as such.

Walgreens argues that, even if Magellan is considered a non-party, cost-shifting is improper because it is "the central and key non-party" in this case. ECF 107 at 14. In support of this argument, Walgreens relies exclusively upon the District Court of Maryland's readily distinguishable decision in *In re: Am Kidney Fund, Inc*., 2019 WL 1894248, at *9 (D. Md. Apr.

---

[6] Walgreens' states that it is willing to enter into a 502(d) stipulation with respect to privileged documents but also suggests that Magellan simply "filter out" potentially privileged documents through the use of TAR and produce the documents that are not filtered out. ECF 107 at 13. If Walgreens is suggesting that Magellan withhold the "filtered out" documents from production without conducting a manual privilege review, Magellan is willing to do so.

06351180.3                                                           9

29, 2019). In that case, American Kidney Fund ("AFK") filed an action seeking to quash non-party subpoenas issued in connection with a case pending in the Southern District of Florida (the "Florida Litigation") and later sought to recover its fees and costs. In denying AFK's request for attorneys' fees under Rule 45(d), the Court noted that, while AFK was never named as a party in the Florida Litigation, the plaintiffs/insurers accused it of "being a willing co-conspirator" in a scheme to steer patients of limited financial means toward private insurance plans in exchange for "charitable contributions." *Am Kidney Fund, Inc*., 2019 WL 1894248, at *2. Based on these allegations, the Court held that AFK clearly had an interest in the outcome of the Florida Litigation because the allegations, if proven true, "would not only severely impact the charity's reputation" but also "likely expose AFK to further lawsuits and criminal actions…". *Id*. at 9.

This case arises out the admitted forgery and fraud of a Walgreens' pharmacist who was sentenced to eighteen months in prison. In contrast to the non-party in AFK, Magellan is not alleged to have had any role or involvement in the fraudulent scheme and certainly gained nothing from it (although Walgreens did). Moreover, Walgreens' suggestion that Magellan could suffer "reputational and litigation risk" *if* the evidence ultimately shows it failed to recognize "obvious indicia of fraud" is nothing more than speculation heaped upon supposition. The bottom line is Magellan's contractual relationship with the State ended over two years ago, it is not "central" to the claims asserted against Walgreens, and the only interest it has in this case is reducing the financial burden associated with Walgreens' overly broad and unduly burdensome ESI requests.

## CONCLUSION

As it stated in its Motion, Magellan is more than willing to provide ESI to <u>the State</u> for <u>the State's</u> production <u>to Walgreens</u> in response to <u>Walgreens'</u> *RFPs* that may assist <u>Walgreens</u> in defending itself subject to continued reasonable negotiation regarding scope; however, Magellan,

as a non-party who does not need these documents and is not poised to benefit from their production, cannot bear the full cost of producing them. Magellan requests that the Court cap its costs to respond to Walgreens' RFPs to the Plaintiffs at $62,000, and allocate all further ESI vendor costs between the parties.

Respectfully submitted this 23rd day of March, 2022.

*/s/ John David Collins*
John David Collins (admitted PHV)
Erica Williamson Barnes (admitted PHV)
*Attorneys for Non-Party Magellan Medicaid Administration, Inc.*

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Ave. North, Suite 1700
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999

06351180.3

11

**CERTIFICATE OF SERVICE**

       I hereby certify that on March 23, 2022, the Clerk of Court was required to filed copies of the foregoing Reply to Motion to Allocate Costs and its attachments. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

       */s/ John David Collins*
       **OF COUNSEL**