IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

UNITED STATES OF AMERICA and
STATE OF TENNESSEE,

      Plaintiffs,

v.                                 Case No. 2:21-CV-000080-JRG-CRW

WALGREEN CO.,

      Defendant.

## STATE OF TENNESSEE'S MOTION TO COMPEL

Pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure, and Local Rules 7.1 and 37.2, Plaintiff State of Tennessee ("State"), by and through its undersigned attorneys, respectfully moves the Court to compel Defendant Walgreen Co. ("Walgreens") to produce documents requested and respond to Interrogatories propounded by the State.

Undersigned counsel certify that he has conferred in good faith with counsel for Walgreens in an effort to resolve the issues that are the subject of the instant motion without the necessity of Court action. In the meet and confer process, Walgreens indicated that it will not produce the requested documents or respond to the propounded Interrogatories because, it contends, such requested discovery is protected from disclosure by the attorney-client privilege and work product doctrine.

### I.    BACKGROUND

On May 10, 2021, Plaintiffs jointly filed this suit against Walgreens, seeking relief under the federal False Claims Act ("FCA"), the Tennessee Medicaid False Claims Act ("TMCFA"), and Tennessee common law. *See* D.E. 1. The complaint alleges that for a period of more than

two years, TennCare, the Medicaid program for the State of Tennessee, paid Walgreens over $5.9 million of taxpayer money for direct-acting antiviral medications used to treat people with Hepatitis C. *See id.* ¶¶ 17-20, 32, 80, 88. TennCare alleges that it was induced to pay these funds because Amber Reilly ("Reilly"), Walgreens' agent and the Registered Store Manager of Walgreens' Specialty Pharmacy in Kingsport, Tennessee and a pharmacist herself, materially falsified, altered, or recreated the prior authorization forms, medical records, and drug test results for 65 TennCare enrollees, indicating that these enrollees met specific, published clinical criteria for coverage and, therefore, were eligible to receive TennCare benefits for these extraordinarily expensive medications. *Id.* ¶¶ 2, 36-37, 44-45, 55-74, 88. Ultimately, the scheme was discovered, and Reilly pleaded guilty to healthcare fraud. *Id.* ¶ 84.[1]

On July 19, 2021, Walgreens filed its Motion to Dismiss Counts I-VI of Plaintiffs' Complaint. D.E. 16. In the memorandum in support of its motion to dismiss, Walgreens argued, *inter alia*, that, with respect to Plaintiffs' reverse FCA claim, "a repayment obligation can only exist once a company has 'identified' an overpayment, by showing at least reckless disregard of its existence. Here, Plaintiffs fall far short of alleging any such action by Walgreens—and, thus, have failed to plead any 'identified' overpayment." D.E. 17, p. 2 (Page ID #132). Walgreens further argued that "an entity that becomes aware of potential overpayments may not incur an actionable repayment obligation until it conducts an internal investigation. . . . Thus, by definition, Reverse FCA liability cannot exist on the basis of an entity's failure to return overpayments during the pendency of its own investigation." *Id.* at 21 (Page ID #151). Walgreens went further in referencing its internal investigation:

---

[1] This Court sentenced Reilly to serve 16 months in prison and ordered her to pay restitution.

> ***Walgreens' internal investigation.*** The Complaint does not allege any specific steps Walgreens' internal investigation should have taken but did not take. *See* Compl. ¶ 83. And the Complaint is devoid of critical details that could suggest the steps Walgreens ***did*** take amounted to a "fail[ure] to take ***reasonable*** steps," *Schaefer*, 2009 WL 5104149, at *4 (emphasis added). . . . Paragraph 83 of the Complaint is devoid of detail that could allow this Court to evaluate whether the investigative steps the company took were the limit of Walgreens' efforts to evaluate potential overpayments, or whether the company's efforts were more ongoing in nature at that time such that they suspended the running of the 60-day repayment clock under PPACA.

*Id.* at 22 (Page ID #152) (emphasis in original).

Given Walgreens' arguments affirmatively placing its internal investigation at issue, the State subsequently submitted written discovery requests to Walgreens concerning the investigation. Specifically, on November 4, 2021, the State served its First Discovery Requests to Defendant. *See* attached Ex. A. On December 14, 2021, Walgreens served its Responses and Objections to Plaintiffs' First Discovery Requests. *See* attached Ex. B. Walgreens responded as follows in response to Interrogatory Numbers 2, 6, and 9:

> **INTERROGATORY NO. 2:**
>
> Identify the steps that you have taken to investigate and/or verify the amount of the Alleged Overpayment, including the "investigation" referenced at Doc. #17, PageID# 134. Include in your response the date that each identified step was taken, all facts gathered during the investigation, all persons contacted and/or interviewed, and all conclusions reached as a consequence of the investigation.
>
> **RESPONSE:**
>
> Walgreens repeats and incorporates the General Objections above. Walgreens further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or doctrine. Nothing in this response is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work-product protection, or other applicable privilege or doctrine. Walgreens further objects to this Interrogatory on the basis that it is overbroad, unduly burdensome, and seeks irrelevant information that is not proportional to the needs of this case.
>
> Subject to and without waiving the foregoing objections, Walgreens responds as follows. Shortly after the Tennessee Bureau of Investigation ("TBI")

3

served subpoenas on Walgreens in early June 2016, Walgreens' in-house counsel initiated an internal investigation. The purpose of this investigation was to obtain relevant facts for purposes of providing legal advice to Walgreens regarding Amber Reilly's potential misconduct identified by the TBI subpoenas. Pursuant to that investigation, the Company's in-house counsel directed Walgreens' Asset Protection Solutions ("APS") team to collect certain information necessary for providing legal advice to the Company. In the course of the investigation, Walgreens' counsel, and/or APS personnel acting at counsel's direction, conducted interviews, gathered and reviewed documents, and responded to requests for information and documents from the government. During the investigation, Walgreens also terminated Reilly, as well as three Specialty Billing Technicians at the Kingsport Specialty Pharmacy (Brianna Brock, Jennifer Watts, and Tiffany Gordon).

The investigation did not conclude with any "verif[ication]" of the alleged overpayments. The government provided a chart in which it compared, for the patients at issue, the patients' fibrosis scores as reflected in records Walgreens understands the government obtained from the patients' physicians, against the patients' fibrosis scores as reflected in records allegedly submitted to TennCare in order for the patients to receive the Relevant Drugs. The chart also included notations indicating whether the government believed a given patient's drug lab test results and/or allergies had been misrepresented in the prior authorization documentation submitted to TennCare. Walgreens evaluated the foregoing information, along with documents available to it relating to the patients at issue, including patient files and prior authorization notes made available to it by the government. However, the foregoing information did not permit the Company to "verify" overpayments for the patients at issue because, among other reasons, it appears that the information the government alleged had been altered in the prior authorization documents was apparent to Magellan when it reviewed and approved the prior authorization requests at issue. The information available to Walgreens also did not allow the Company to reach any conclusion that the patients at issue had not been clinically eligible for the Relevant Drugs; where the information available to Walgreens did enable an analysis of clinical eligibility, it appeared that the patients *were* clinically eligible even if the extent to which they met TennCare's prior authorization criteria was in dispute.

\*\*\*\*

**INTERROGATORY NO. 6:**

Identify all individuals interviewed by Walgreen's Asset Protection Investigation Team, including David Quillen, and summarize the substance of those interviews.

4

**RESPONSE:**

Walgreens repeats and incorporates the General Objections above. Walgreens further objects to this Interrogatory on the basis that it is overbroad, unduly burdensome, and not proportional to the needs of this case. Walgreens further objects on the basis that this Interrogatory calls for information protected by the attorney-client privilege and the work product doctrine, including but not limited to insofar as it seeks information regarding steps taken and decisions made in the course of the Company's investigation of the matters underlying the allegations in this litigation. Nothing in this response is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work-product protection, or other applicable privilege or doctrine.

\*\*\*\*

**INTERROGATORY NO. 9:**

Have you obtained a statement relating to Amber Reilly, Brianna Brock and/or the Alleged Overpayment from any person not a party to this action? If so, then for each statement, state separately:

a) the name and address of the person who made the statement and the date upon which and location where the statement was made;

b) the name and address of the person who took the statement and, if recorded, the nature and present location of the recording;

c) if written, identify any person having custody of the statement or a copy of it, and state whether the statement was signed by the person giving the statement;

d) identify the statement, including its contents.

**RESPONSE:**

Walgreens repeats and incorporates the General Objections above. Walgreens further objects to this Interrogatory on the basis that it is overbroad, unduly burdensome, and not proportional to the needs of this case. Walgreens further objects to this Interrogatory on the basis that the term "statement" is vague and ambiguous. Walgreens further objects on the basis that this Interrogatory calls for information protected by the attorney-client privilege and the work product doctrine, including but not limited to insofar as it seeks information regarding statements made to Walgreens in the course of the Company's investigation of the matters underlying the allegations in this litigation. Nothing in this response is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work-product protection, or other applicable privilege or doctrine.

5

Subject to and without waiving the foregoing objections, Walgreens responds as follows. Walgreens received written statements from certain individuals in the course of the Company's internal privileged investigation in the immediate wake of the TBI subpoenas. Those statements, and the identities of those who made them, are not subject to disclosure because they are protected by the attorney-client privilege and the work product doctrine, including because: the documents are communications that Walgreens' legal function sought and received in an effort to gather facts for the purpose of rendering legal advice to the Company; the statements are documents created by personnel, acting at the direction of counsel, in reasonable anticipation of litigation; and the statements and the identities of those who gave them reflect the mental impressions, conclusions, opinions, and/or legal theories of Walgreens' counsel. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981); Fed. R. Civ. P. 26(b)(3)(A), (B). To the best of Walgreens knowledge, information, and belief formed after a reasonably diligent inquiry, there are currently no other statements that are responsive to this Interrogatory and that are in Walgreens' possession, custody or control.

*Id.* at pp. 6-16. Walgreens responded similarly in response to the State's related requests for production of documents:

**REQUEST FOR PRODUCTION NO. 1:**

Produce your internal or external audits, reviews, investigations, reports regarding Amber Reilly and/or Brianna Brock during the relevant time period.

**RESPONSE:**

Walgreens repeats and incorporates the General Objections above. Walgreens further objects to this RFP on the basis that it is overbroad, unduly burdensome, and calls for information that is irrelevant and not proportional to the needs of this case. Walgreens further objects on the basis that this RFP calls for information protected by the attorney-client privilege and the work product doctrine, including but not limited to because the RFP calls for materials relating to Walgreens' privileged internal investigation of the matters underlying the allegations in this case. Nothing in this response is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work-product protection, or other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Walgreens responds as follows. Walgreens will produce responsive non-privileged documents relating to its investigation in response to the TBI subpoenas, to the extent such documents exist and can be located via a reasonably diligent search.[2]

---

[2] To date, Walgreens has yet to produce any such documents it has determined are non-privileged.

6

**REQUEST FOR PRODUCTION NO. 2:**

If not produced in response to Request #1, produce all investigative files and reports prepared by, and documents and factual data compiled by, Walgreen's Asset Protection Investigation Team, including all investigative files and reports associated with the "investigation" referenced at Doc. #17, Page ID# 134.

**RESPONSE:**

Walgreens repeats and incorporates the General Objections above. Walgreens further objects to this RFP on the basis that it is overbroad, unduly burdensome, and calls for information that is irrelevant and not proportional to the needs of this case, including insofar as it lacks a temporal limitation and purports to require production of documents related to investigations completely irrelevant to this case. Walgreens further objects on the basis that this RFP calls for information protected by the attorney-client privilege and the work product doctrine, including but not limited to because the RFP calls for materials relating to Walgreens' privileged internal investigation of the matters underlying the allegations in this case. Nothing in this response is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work-product protection, or other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Walgreens responds as follows. *See* Response to RFP No. 1.

*Id.* at pp. 19-20.

Walgreens' own legal arguments in its motion to dismiss (and subsequently its incomplete discovery responses) squarely place its internal investigation at issue. Yet Walgreens has refused to produce its internal investigation documents. Even assuming that the attorney-client privilege and/or work product doctrine were otherwise applicable to Walgreens' internal investigation documents – which cannot be determined because Walgreens has yet to produce a privilege log – those protections have been waived because Walgreens cannot affirmatively use its internal investigation as a sword, but also use it as a shield by refusing to produce to the State those very internal investigation documents in discovery.

7

## II. LAW AND ARGUMENT

A court's "paramount purpose is to determine the truth, and the broad rules of discovery are essential tools to facilitate that truth-finding process." *Goff v. Kroger Co.*, 121 F.R.D. 61, 62 (S.D. Ohio 1988); *see also Nethery v. Quality Care Investors, L.P.*, 2019 WL 12023210, at *3 (M.D. Tenn. Feb. 11, 2019) (the judicial "process works to uncover the truth."). The Federal Rules of Civil Procedure indeed "contemplate broad examination of the merits of the case" since the "'purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case.'" *Smith & Nephew Inc. v. Northwest Ortho Plus, Inc.*, 2012 WL 13027947, at *1 (W.D. Tenn. July 17, 2012) (quoting 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2007 (3d ed. 2007)). "The concept of relevancy is to be more loosely construed at the discovery stage than at trial." *Id.*[3]

### A. Reverse FCA

Prior to the 2009 amendments to the FCA, "the reverse false claims provision left a 'loophole' that excused from liability the concealment, avoidance, or decreasing of an obligation to return to the Government 'money or property that is knowingly retained by a person even though

---

[3] In its discovery responses, Walgreens, in addition to its privilege and work product objections, has lodged boilerplate objections to the written discovery requests at issue, including that they are "overbroad, unduly burdensome, and call[] for information that is irrelevant and not proportional to the needs of this case." *See, e.g.*, Walgreens' Response to RFP No. 1. The concept of relevancy for discovery purposes, however, is "extremely broad." *Neale v. Coloplast Corp.*, 2020 WL 6948361, at *2 (E.D. Tenn. Nov. 2, 2020); *Porter v. AAR Aircraft Servs., Inc.*, 2016 WL 10570881, at *1 (W.D. Tenn. Sept, 26, 2016). Relevance "'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Neale*, 2020 WL 6948361, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Certainly when and whether Walgreens identified an FCA overpayment, as could likely be shown via its internal investigation documents, is highly relevant to Plaintiffs' reverse FCA claim. Moreover, there is nothing that is overly broad or unduly burdensome about Walgreens being required to produce this information and documentation, especially when Walgreens has itself voluntarily attempted to use its internal investigation as a sword and shield. (While the State is hamstrung by Walgreens' failure to produce a privilege log that would show how large its internal investigation documents are, there is certainly no reason to think that Walgreens does not have them readily available.)

8

they have no right to it.'" *United States ex rel. Kaine v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 380 (S.D.N.Y. 2015) (quoting S. Rep. 111–10, 13–14, 2009 U.S.C.C.A.N. 430, 441). The FCA's 2009 amendments allow the imposition of reverse FCA liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).[4] The terms "knowing" and "knowingly," in addition to encompassing "actual knowledge," include situations in which a person "acts in deliberate ignorance" or "reckless disregard" of the truth or falsity of information. *Id.* § (b)(1)(A). (No proof of "specific intent to defraud" is required. *Id.* § (b)(1)(B)).

As pertains to the instant case, the Affordable Care Act of 2010 "provides that any person who has received an overpayment from Medicare or Medicaid and knowingly fails to report and return it within sixty days after the date on which it was identified has violated the FCA." *Kane*, 120 F. Supp. 3d at 381 (citing 42 U.S.C. § 1320a–7k(d)).

B. **Walgreens' Waiver of Attorney-Client Privilege and the Work Product Doctrine**

As noted previously, Walgreens claimed in the memorandum in support of its motion to dismiss that for reverse FCA purposes "a repayment obligation can only exist once a company has 'identified' an overpayment, by showing at least reckless disregard of its existence." D.E. 17, p. 2 (Page ID #132). Walgreens likewise claimed that Plaintiffs' complaint "is devoid of detail that could allow this Court to evaluate whether the investigative steps the company took were the limit of Walgreens' efforts to evaluate potential overpayments, or whether the company's efforts were

---

[4] In this context, an "obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." *Id.* § (b)(3).

9

more ongoing in nature at that time such that they suspended the running of the 60-day repayment clock under PPACA." *Id.* at 22 (Page ID #152).

In affirmatively framing its defense in this fashion, Walgreens voluntarily placed the thoroughness, reasonableness, and conclusions of its internal investigation at issue in this litigation. Yet Walgreens refuses to provide its internal investigation documents in response to the State's written discovery requests, contending that they are protected from disclosure by the attorney-client privilege and/or work product doctrine. And this even while Walgreens states in its discovery responses that its "investigation did not conclude with any 'verif[ication]' of the alleged overpayments. . . . The information available to Walgreens also did not allow the Company to reach any conclusion that the patient at issue had not been clinically eligible for the Relevant Drugs; where the information available to Walgreens did enable an analysis of clinical eligibility, it appeared that the patient *were* clinically eligible even if the extent to which they met TennCare's prior authorization criteria was in dispute." *See* Ex. B, pp. 6-7.[5]

The State submits that even if the attorney-client privilege and work product doctrines would otherwise apply, they have been waived due to Walgreens' impermissible attempts to use its internal investigation as both a sword and a shield. *See Angelone v. Xerox Corp.*, 2011 WL 4473534, at *2-*3 (W.D.N.Y. Sept. 26, 2011) (holding that "the clear majority view is that when a Title VII defendant affirmatively invokes a *Faragher–Ellerth* defense that is premised, in whole

---

[5] A voluntary discovery response, as is the case here, can also waive a privilege. *See, e.g., Harvey v. Ranson Golden Horseshoe, Inc.*, 2015 WL 13755073, at *4 (N.D. W. Va. 2015) ("Defendants waived the attorney-client privilege with regard to information responsive to Interrogatory No. 25 and Document Request Nos. 29 and 30 when they stated in their discovery responses that Defendant Sullivan had consulted with counsel regarding the treatment of exotic dancers as independent contractors. . . . Defendants may not now use their attorney-client communications as both a sword and a shield to gain an unfair tactical advantage over Plaintiff."); *In re G-I Holdings Inc.*, 218 F.R.D. 428, 433 (D.N.J. 2003) (holding that interrogatory response waived attorney-client privilege by relying upon advice of counsel to show its claimed good faith: "Had Debtors sought to preserve the attorney-client privilege, they should have refrained from raising the advice of counsel altogether.").

10

in or [sic] part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); *Brownell v. Roadway Package Sys, Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999) ("Where, as here, the employer defends itself by relying upon the reasonableness of its response to the victim's allegations, the adequacy of the employer's investigation becomes critical to the issue of liability. The only way that Plaintiff, or the finder of fact, can determine the reasonableness of Defendant's investigation is through full disclosure of the contents thereof."); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (42 U.S.C. § 1983 case holding that defendants waived attorney client privilege because they "invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, for the legal advice they received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to 'defend' against defendants' affirmative defense, for the protected information is also germane to plaintiff's burden of proving malice or unreasonable disregard of his clearly established constitutional rights."); *see also Arnold v. City of Chattanooga*, 19 S.W.3d 779, 787 (Tenn. Ct. App. 1999) ("Courts have universally held that a party is prevented from invoking the work product doctrine immunity as both 'sword and shield'").

Waiver is appropriate here because Walgreens cannot have it both ways – having asserted these defenses in an attempt to have the reverse FCA claim dismissed, and then selectively disclosing only favorable information in its discovery responses, the State is now entitled to receive and review Walgreens' full investigative file documents. *See Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *8 (E.D. La. June 18, 2003) ("The attorney-client privilege was

intended as a shield, not a sword. When confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of privilege. The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." (quoting *Conkling v. Turner,* 883 F.3d 431, 434 (5th Cir. 1989)); *see also United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) ("Exxon has waived its attorney-client privilege by raising the defense of good faith reliance on DOE's representations. These defenses do not solely relate to the 'objective' representations of DOE but directly concern Exxon's subjective interpretation and understanding of those representations; i.e., Exxon's corporate state of mind. . . . Thus, the only way to assess the validity of Exxon's affirmative defenses, voluntarily injected into this dispute, is to investigate attorney-client communications").

In an instructive case, *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 890 (M.D. Tenn. 2010), the district court granted the plaintiff's motion to compel the production of interview memoranda conducted by Berexa, defense counsel hired to conduct an internal investigation into plaintiff's sexual harassment claims. The district court concluded that the defendant, by asserting the *Faragher-Ellerth* affirmative defense (including the argument that it exercised reasonable care in investigating the plaintiff's allegations) in its motion for summary judgment, had waived the attorney-client privilege and work product protection: "the defendant cannot use the Berexa report as a sword by premising its *Faragher–Ellerth* defense on the report, then later shield discovery of documents underlying the report by asserting privilege or work-product protection." *Id.* at 892 (citations omitted.) The district court explained that "[t]he Sixth Circuit has recognized that, when a party uses 'the content of privileged communications' offensively, it is troublesome for the party

12
Case 2:21-cv-00080-JRG-CRW Document 112 Filed 04/06/22 Page 12 of 16 PageID #: 1944

to subsequently claim privilege 'as a shield to prevent either testing of the claim or, if some privileged communications have been revealed, amplification or impeachment of the material. . . . Accordingly, 'the privilege may be implicitly waived when the defendant asserts a claim that in fairness requires examination of protected communications.'" *Id.* at 892-93 (quoting *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005)). Against this backdrop, the district court ultimately determined that the defendant's "reliance on the report waived the attorney-client privilege and work-product protection for the interview memoranda." *Id.* at 893[6]; *see also Moore Freight Servs., Inc. v. Mize*, 2022 WL 325595, at *22 (Tenn. Ct. App. Feb. 3, 2022) (non-compete case holding that defendant could not "'use the internal investigation information as supplying the reason for [plaintiff's] termination and then assert that the defendant or defendants cannot have access to the very same information.'" (quoting *Arnold*, 19 S.W.3d at 787)).

Finally, having voluntarily placed its internal investigation at issue, the waiver is complete and final, even if Walgreens did not prevail on its motion to dismiss. "[O]nce the privilege is waived with regard to a particular communication, it is lost forever and may not be asserted later in the same proceeding or in another proceeding." 1 David M. Greenwald, *Testimonial Privileges* § 1:75 (3d ed.). "[O]nce a waiver occurs, it is permanent and the protections of privilege cannot ever be regained." *See* Claudine V. Peace Wingenter, *Skating Too Close to the Edge: A Cautionary Tale for Tax Practitioners About the Hazards of Waiver*, 81 U. Cin. L. Rev. 953, 964 (2013); *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 307 (6th Cir.

---

[6] The district court so held even though the plaintiff had abandoned her hostile work environment claim in response to the motion for summary judgment (though retaining her retaliation claim): "Having previously decided to rely on the investigation in its summary judgment papers, the defendant cannot now 'unwaive' privilege and work-product protection. The defendant achieved exactly the result it wanted by raising the defense—the hostile environment claim was dismissed. The City cannot argue that its ultimate success somehow negates the waiver inherent in that tactical decision." *Id.* at 894-95.

13

2002) (holding that the standard for waiving the attorney-client privilege is the same for the work product doctrine – once there is a waiver, it "is complete and final").

### III. CONCLUSION

For all of the foregoing reasons, the State respectfully requests that the Court grant the instant motion and issue an order directing Walgreens to promptly produce the requested documents and fully respond to the Interrogatories identified herein.

Respectfully submitted,

/s/ Jef Feibelman
Jef Feibelman (BPR #007677)
Jonathan P. Lakey (BPR#16788)
Melissa A. Maravich (BPR #013876)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee  38103
(901) 524-5000
jfeibelman@bpjlaw.com
mmaravich@bpjlaw.com
jlakey@bpjlaw.com


HERBERT H. SLATERY III
Attorney General and Reporter

By:   /s/ David M. Rudolph
David M. Rudolph (BPR #13402)
Assistant Attorney General
One Commerce Square
40 South Main Street, Suite 1014
Memphis, Tennessee  38103-1877
(901) 543-4162
David.Rudolph@ag.tn.gov

/s/ W. Anthony Hullender
W. Anthony Hullender (BPR #019436)
Senior Assistant Attorney General
P.O. Box 20207
Nashville, Tennessee  37202-0207
(615) 532-2536
Tony.Hullender@ag.tn.gov

*Counsel for State of Tennessee*

## RULE 37 CERTIFICATE OF CONSULTATION

Pursuant to Fed. R. Civ. P. 37(a)(1), I hereby certify that I have in good faith conferred with defense counsel for Walgreen Co., the party failing to make disclosure or discovery, in an effort to obtain it without Court action.

/s/ Jef Feibelman
Jef Feibelman

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Jef Feibelman
Jef Feibelman