UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Case No. 2:21-CV-00080-JRG-CRW <br><br> **ORAL ARGUMENT REQUESTED** |

## WALGREEN CO.'S OPPOSITION TO STATE OF TENNESSEE'S MOTION TO COMPEL

The Motion to Compel (the "Motion") by the State of Tennessee (hereinafter "State") is an unabashed attempt to invade the attorney-client and work product privileges. In its zeal, the State runs roughshod over applicable law and established norms of civil practice in an attempt to manufacture a waiver of the attorney-client privilege and work product protection of Walgreen Co. (hereinafter "Walgreens" or "Company"). To be clear: neither the legal arguments Walgreens advanced in its Motion to Dismiss nor any of its discovery responses asserting privileges with respect to the Company's internal investigation relied on or placed privileged communications or work product at issue in this case. The Court should deny the Motion.

The State does not dispute that Walgreens' internal investigation is protected by the attorney-client privilege and the work product doctrine. Nor does the State dispute (for it never could) that these are sacred, fundamental privileges that cannot be waived by mere inadvertence or accident. Instead, the State attempts to argue that a waiver has occurred, but the State has not demonstrated—and cannot demonstrate—that one has, because Walgreens did not knowingly and voluntarily place its privileged communications or advice of counsel at issue. Indeed, the State

fails to identify a single case in which any court anywhere has ever found a privilege waiver resulting from a party merely challenging the legal sufficiency of a complaint in a motion to dismiss. The argument is frivolous. Walgreens has never put its privileged communications at issue or relied on the advice of counsel in this litigation—not in moving to dismiss the Complaint, and not in its discovery responses. Walgreens has been exceedingly careful about not waiving privileges because of the potential serious ramifications including, but not limited to, the disclosure of an internal privileged report ordered by the Company's Global Chief Legal Officer and in-house lawyer communications about and oversight of the investigation. The State's bad-faith attempt to argue otherwise borders on sanctionable.

In its effort to make the argument anyway, the State asks this Court to subvert basic pleading principles, accept misstatements of established law, and reward the State's attempt to entrap Walgreens into a waiver. The State should know better than to make frivolous arguments that threaten what the Supreme Court has called "the oldest of the privileges for confidential communications known to the common law" (referring to the attorney-client privilege) and a rule backed by "'strong public policy'" (referring to the work product doctrine). *Upjohn Co.* v. *United States*, 449 U.S. 383, 389, 398 (1981). Accordingly, Walgreens respectfully requests that this Court reject the State's subversive tactics, deny the Motion, and award Walgreens its "reasonable expenses incurred in opposing the [M]otion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B).

## I. BACKGROUND AND PROCEDURAL HISTORY

In June 2016, the Tennessee Bureau of Investigation ("TBI") served subpoenas on Walgreens seeking records related to prescriptions it filled for certain patients and documentation related to those patients submitted to TennCare. Complaint, ECF 1 ¶¶ 81-82; Answer, ECF 111 ¶¶ 81-82. In October 2016, in the wake of the State's investigation, Amber Reilly ("Reilly"), a

2

Walgreens employee, pled guilty to one count of healthcare fraud and went to prison. *See* Complaint, ECF 1 ¶ 84; Answer, ECF 111 ¶ 84.

Shortly after the State's investigation commenced, Walgreens' Global Chief Legal Officer ordered the Walgreens legal team to conduct an internal investigation to obtain relevant facts for purposes of providing legal advice to Walgreens regarding Reilly's potential misconduct. As part of that internal investigation, Walgreens' in-house counsel directed the Company's asset protection team to collect select information necessary for providing legal advice on matters including, but not limited to, Reilly's conduct, what steps might be necessary in terms of Reilly's employment, and the state of Walgreens' compliance policies and procedures. In or around July 2016, during the course of its internal investigation, Walgreens fired Reilly.

After investigating for nearly five more years, the State (along with the United States) filed a Complaint on May 10, 2021, alleging violations of the False Claims Act ("FCA") (including the Reverse FCA), the Tennessee Medicaid False Claims Act ("TMFCA"), and common-law doctrines of payment by mistake and unjust enrichment.[1] ECF 1. On July 19, 2021, Walgreens moved to dismiss the Complaint. ECF 16, 17. In relevant part, the Complaint alleged that a visit by Walgreens' asset protection team to the Kingsport pharmacy "recovered records that had been altered" and yielded an admission by a Walgreens employee "who worked at the direction of Ms. Reilly" that the employee had "falsif[ied] several prior authorization records at the direction of Ms. Reilly," thus placing Walgreens allegedly "on notice that it had obtained payments fraudulently and that it had an obligation to reimburse TennCare for such overpayments." ECF 1 ¶ 83. In its Motion to Dismiss, Walgreens argued that Plaintiffs had not sufficiently pled an

---

[1] While the State alone filed the instant Motion to Compel, the State and the United States are referred to collectively as Plaintiffs where applicable.

obligation to return overpayments to TennCare. Walgreens contended that, as a matter of law, such an obligation cannot exist while a company's internal investigation of possible overpayments is pending. ECF 17 at 21-22. Walgreens made that argument without disclosing any privileged information relating to the investigation. *Id*. Walgreens argued that Plaintiffs' claims about Walgreens' conduct, including its internal investigation, did not satisfy the legally required element that Walgreens recklessly disregarded a repayment obligation by means of its investigation. *Id*. Walgreens never affirmatively relied on or placed at issue any legal advice or work product of its internal investigation.

In November 2021, the State served Walgreens with multiple discovery requests seeking information about the Company's internal investigation. *See* Mot. at 3-7. Walgreens objected repeatedly and consistently to those requests on privilege grounds. Because the State sought documents and information protected by the attorney-client privilege and/or the work product doctrine, Walgreens properly refused to produce the information. In its Motion, the State misstates the record regarding Walgreens' production of documents. Specifically, the State argues that "[t]o date, Walgreens has yet to produce any such documents [relating to its investigation] it has determined are non-privileged," *id*. at 6 n.2. In reality, Walgreens *has* produced non-privileged documents relating to its internal investigation.[2]

---

[2] For example, Walgreens has produced the following non-privileged documents relating to its internal investigation: WAG_EDTN_0005564, 0005566, 0005569, 0005572, 0006211, 0006213, 0006214, 0006217, 0006221, 0006225, 0006230, and 0008482. With respect to privilege logs, Walgreens understands that all parties, including Plaintiffs, are diligently in the process of preparing privilege logs. Like Walgreens, Plaintiffs have refused to produce documents and responsive information on the ground of applicable privileges. The United States has yet to produce any privilege log; and the State has produced an inadequate self-described "draft" privilege log with the promise of producing a compliant one at some point in the future. Walgreens is also working on its privilege log. On March 4, 2022, the State asked undersigned counsel to discuss a number of discovery items, including privilege logs, in a meet-and-confer, but the State never raised any issue with privilege logs during the call.

On March 28, 2022, after the Court denied Walgreens' Motion to Dismiss (ECF 104), Walgreens filed and served its Answer to the Complaint. ECF 111. Walgreens also asserted eleven affirmative and other defenses. Walgreens did *not* assert any defense relying on the advice of counsel, did *not* assert any defense relying on its internal investigation, and did *not* in any way invoke its internal investigation. *See id*. at 31-34. Nine days later, the State filed this Motion claiming that Walgreens' statements in its nearly year-old Motion to Dismiss, and its assertions of privilege in responding to document requests and interrogatories, waived privilege. ECF 112.

## II. LEGAL STANDARD

The attorney-client privilege is sacred. "It is not hyperbole to suggest that the attorney-client privilege is a necessary foundation for the adversarial system of justice." *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005). The attorney-client privilege protects confidential communications from client to attorney for the purpose of seeking the attorney's legal advice. *In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006). The privilege also "exists to protect . . . the giving of professional [legal] advice to those who can act on it." *Upjohn*, 449 U.S. at 390; *see also Jones v. Nissan N. Am., Inc.*, 2008 WL 4366055, at *6 (M.D. Tenn. Sept. 17, 2008) ("The privilege also protects advice given by the lawyer in the course of representing the client."). In the seminal case of *Upjohn Co. v. United States*, the Supreme Court held that the attorney-client privilege protects communications between a company's counsel and its employees for the purpose of gathering facts to provide legal advice to the company. 449 U.S. at 394-95.

The State plainly understands the sanctity of the attorney-client and work product privileges, as it has invoked privileges in refusing to produce documents and information in this case. The State also has argued strenuously against discovery on that very ground in other cases. *See, e.g.*, Defendants' Response to Plaintiffs' Brief Opposing the State's Claim of Privilege, *John B. v. Goetz*, No. 98-cv-00168, ECF 978 (M.D. Tenn. June 25, 2007), at 1 (arguing against

discovery of communications with State Medicaid contractors because the attorney-client privilege is "the most venerable of the common-law privileges").

The work product doctrine protects materials prepared in anticipation of litigation, by or for a party or its representative, and in so doing protects the adversary process and deters opposing parties from interfering with or cribbing from each other's strategy, thoughts, and impressions. *See Kenco Grp., Inc. v. Kennedy*, 2021 WL 6335214, at *3 (E.D. Tenn. Sept. 29, 2021); *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.").

Given the well-established sanctity of the attorney-client privilege and work product doctrine, courts are very careful not to find waiver unless there has been an unambiguous, knowing, purposeful, and voluntary disclosure of privileged communications where a party affirmatively places such communications at issue in the case. *New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 918 (6th Cir. 2010).

### III. ARGUMENT

A. **Walgreens Did Not Waive Privilege in Moving to Dismiss the Complaint**

    1. **Walgreens Did Not Waive Its Privileges by Arguing the Complaint Failed to State a Claim Upon Which Relief Could Be Granted**

The State has not pointed—and cannot point—to any authority whatsoever for what it is asking this Court to do: to find a knowing and intentional waiver of privilege based on a party's accepting a complaint's allegations as true for purposes of a motion to dismiss. In every case the State cites, a party knowingly and purposefully waived privilege by affirmatively relying on privileged communications in a complaint, an answer to the complaint, a motion for summary

judgment, or a public relations statement.³ In each of those cases, it was clear that a party was expressly relying on privileged communications and, thus, waiving privileges.

Here, by contrast, Walgreens has not relied on privileged communications in its Motion to Dismiss, its Answer to the Complaint, or its discovery responses. Assuming the truth of the allegations in the Complaint for purposes of its Motion to Dismiss simply cannot constitute a knowing and voluntary waiver of privileges. The purpose of a motion to dismiss is to test the legal sufficiency of a plaintiff's complaint. *Hoy v. Progress Pattern Co.*, 217 F.2d 701, 703 (6th Cir. 1954). In doing so, a defendant must treat the complaint's allegations as true for purposes of the motion, and establish that, even if true, the allegations fail to state a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In this case, Walgreens did exactly that. It assumed the truth of Plaintiffs' allegations regarding the Company's internal investigation, and argued why those allegations were insufficient to establish that Walgreens had a repayment obligation, let alone one that it recklessly disregarded. ECF 17 at 21-22. Plaintiffs put Walgreens' internal investigation at issue in their Complaint, *see* ECF 1 ¶ 83, and Walgreens simply argued that *the State's assertion* that Walgreens learned of the alleged overpayment through its internal investigation was insufficient to plead Reverse FCA liability. ECF 17 at 21-22. The Motion to Dismiss did *not* introduce any extrinsic facts about the investigation, did *not* rely on any privileged communications, and did *not* rely on

---

³ *Moore Freight Servs., Inc. v. Mize*, 2022 WL 325595 (Tenn. Ct. App. Feb. 3, 2022) (complaint); *Angelone v. Xerox Corp.*, 2011 WL 4473534 (W.D.N.Y. Sept. 26, 2011) (answer); *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888 (M.D. Tenn. 2010) (summary judgement); *Brownell v. Roadway Package Sys, Inc.*, 185 F.R.D. 19 (N.D.N.Y. 1999) (answer); *Arnold v. City of Chattanooga*, 19 S.W.3d 779 (Tenn. Ct. App. 1999) (public relations offensive); *United States v. Exxon Corp.*, 94 F.R.D. 246 (D.D.C. 1981) (answer); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) (answer).

any protected work product. *See id.* Simply put, Walgreens' Motion to Dismiss did not waive the attorney-client or work product privileges.

The State's Motion contradicts its prior position before this Court in seeking to stay discovery pending the Court's determination of Walgreens' Motion to Dismiss. In its motion to stay discovery, Plaintiffs argued that they could not properly assess the necessary scope of their discovery requests because Walgreens had not filed an answer and Plaintiffs accordingly lacked notice of "any affirmative defenses [Walgreens] claim[ed] to have." ECF 69 at 11. Now that Walgreens has presented the State with its Answer, including its affirmative defenses—none of which invoke the advice of counsel or any privileged information—the State is trying to walk back its rhetoric and claim that Walgreens' Motion to Dismiss actually *did* "affirmatively fram[e] its defense[s]." ECF 112 at 10. The State cannot have it both ways. Walgreens has not invoked privileged communications in its defenses, and the State is now using a nearly year-old motion to dismiss to conjure up a waiver argument.

### 2. Walgreens Has Never Placed at Issue Its Legal Advice or Work Product

Walgreens' Motion to Dismiss did not place at issue any legal advice or work product. Plaintiffs' Complaint alleged (¶ 83), in relevant part:

> On June 15, 2016, Defendant's loss prevention personnel went to the Kingsport Pharmacy to investigate and recovered records that had been altered. The loss prevention personnel also spoke to an employee of Defendant who worked at the direction of Ms. Reilly, and the employee admitted to falsifying several prior authorization records at the direction of Ms. Reilly. This discovery further put Walgreens on notice that it had obtained payments fraudulently and that it had an obligation to reimburse TennCare for such overpayments.

In its Motion to Dismiss, Walgreens made general references to what Plaintiffs alleged. Specifically, Walgreens argued that Plaintiffs' allegation that Walgreens' investigation put it on "notice" of overpayments was legally insufficient. *See* ECF 17 at 22. Walgreens argued that the Complaint lacked specificity under Rule 9(b): "[t]he Complaint does not allege any specific steps

Walgreens' internal investigation should have taken but did not take. . . . And the Complaint is devoid of critical details that could suggest the steps Walgreens *did* take amounted to a 'fail[ure] to take reasonable *steps*[.]' . . . Plaintiffs do not provide any details regarding the 'records that had been altered' and that the loss prevention investigators 'recovered' upon visiting the Kingsport Pharmacy. . . . Without such details, the Complaint falls short of what Rule 9(b) requires." *Id.* Walgreens further argued that the allegations about the Company's investigation were insufficient to determine whether the 60-day repayment clock was suspended: "Paragraph 83 of the Complaint is devoid of detail that could allow this Court to evaluate whether the investigative steps the [C]ompany took were the limit of Walgreens' efforts to evaluate potential overpayments, or whether the [C]ompany's efforts were more ongoing in nature at that time such that they suspended the running of the 60-day repayment clock under PPACA." *Id.* These general references in response to Plaintiffs' allegations did not invoke or rely on any legal advice and, thus, cannot constitute a waiver.

In the Sixth Circuit, a waiver of privilege occurs only when a party "affirmative[ly] reli[es] on the advice of counsel as an aspect of a claim or defense." *Harrison v. Proctor & Gamble Distrib., LLC*, 2016 WL 11642223, at *3 (S.D. Ohio Nov. 10, 2016) (quotation marks omitted). In *Harrison*, the court found that the defendant did *not* waive privilege "by asserting [in its answer] a good faith defense to Plaintiff's claims for liquidated and punitive damages" "on the basis of its policies and procedures, [its] internal investigation conducted by [] HR [], and other relevant facts." *Id.* (quotation marks omitted). The court found that, by relying generally on its internal policies and investigation, *the defendant had not affirmatively put the advice of counsel at issue*, and, therefore, had not waived privilege. *Id.* Similarly, in *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 689 (W.D. Mich. 1996), the district court held that the

attorney-client privilege was not waived when a party's "references to the [privileged information are] general in nature and lacking substantive content" in a motion to dismiss. Notably, the district court found against waiver where the defendant discussed a privileged report in its motion to dismiss, but "did not reveal any of the Report, nor did it summarize evidence contained in the Report." *Id.* at 689-90.

So too here. In its Motion to Dismiss, Walgreens did no more than generally refer to its investigation in response to the Complaint's allegations about that same investigation. Walgreens did far less than what the district courts in *Harrison* and *Picard Chemical* determined did not constitute a waiver. Walgreens did not assert a good-faith defense relying on its internal investigation and, as in *Harrison* and *Picard Chemical*, Walgreens did not place any advice of counsel at issue. *See generally* ECF 17, ECF 111. Indeed, at no time has Walgreens "indicate[d] that attorney communications will be relied upon in presenting" any defenses. *Harrison*, 2016 WL 11642223, at *3. Just as the courts in *Harrison* and *Picard Chemical* found that the defendants did not waive privilege by making a general reference to an internal investigation or privileged report, this Court should similarly hold that general references to a company's internal investigation in response to allegations relating to such investigation in a motion to dismiss do not constitute a waiver of sacred privileges.

Moreover, conspicuously absent from the State's Motion to Compel is any reference whatsoever to Walgreens' Answer. That is because Walgreens made clear in its Answer, as it has done since the start of this case, that it is not waiving privileges to its internal investigation. Not a single defense asserted in Walgreens' Answer relies on the Company's internal investigation or any legal advice. *See* ECF 111 at 31-34. The only reference to Walgreens' internal investigation appears in response to the State's allegation relating to the internal investigation in Paragraph 83

of the Answer. In that paragraph—disregarded entirely by the State in its Motion to Compel—Walgreens stated:

> Walgreens admits that on June 15, 2016, a member of Walgreens' Asset Protection Solutions team went to the Kingsport Pharmacy to investigate, but denies the remaining allegations [in Paragraph 83 of the Complaint] and ***states that Walgreens' investigation was conducted at the direction of in-house legal counsel and is thus protected by the attorney client privilege and work product protection, and, thus, was privileged***.

*Id*. ¶ 83 (emphasis added).

In short, when the time came for Walgreens to spell out its defenses against Plaintiffs' allegations, those defenses did not include any reliance on legal advice and/or the Company's internal investigation. Moreover, even assuming hypothetically that Walgreens had raised a defense relating to its internal investigation (it has not), there is "no benefit in holding [a defendant] to a defense it does not intend to assert at trial." *Plate, LLC v. Elite Tactical Sys., LLC*, 2020 WL 5209303, at *10 (E.D. Tenn. Sept. 1, 2020) (quotation marks omitted). Walgreens did not assert any defenses in its Answer that are based on either the advice of counsel or the adequacy of its investigation. Walgreens expressly made clear that it was not waiving any privileges. No waiver has occurred.

Every case relied on by the State demonstrates that a party must expressly rely on privileged communications and/or a privileged investigation in its defenses before any waiver can be found. For example, the defendant in *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 890 (M.D. Tenn. 2010), a workplace sexual harassment case, expressly relied on the "*Faragher–Ellerth* affirmative defense, which requires the [defendant] employer to [bear the burden of] show[ing] that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior" through its legal policies and internal investigation of the incident. *Id*. at 892 (internal quotations omitted). It therefore follows that, upon asserting the defense, a defendant waives privilege over

those topics—and the court in *Reitz* indeed held as much by finding that the defendant knowingly waived privileges over its internal investigation.[4] *Id*. at 892-94. *Reitz* is also procedurally distinguishable; the defendant explicitly relied on the affirmative defense in its motion for summary judgment. *Id*. at 892.

Conversely, here, Walgreens did not assert in either its Motion to Dismiss or its Answer that its internal investigation was reasonable. Instead, Walgreens merely stated in its Motion to Dismiss that Plaintiffs had not sufficiently alleged that Walgreens "identified" overpayments through its internal investigation. ECF 17 at 21. Walgreens is not relying on its investigation to support any affirmative defense, and the burden of proving that Walgreens identified overpayments, and then knowingly and improperly avoided returning them, remains squarely with Plaintiffs.

*Moore Freight Services, Inc. v. Mize*, 2022 WL 325595 (Tenn. Ct. App. Feb. 3, 2022) similarly demonstrates that a party must affirmatively rely on its internal investigation before there can be any waiver. In *Moore*, a non-compete case, the plaintiff effected a waiver by alleging in its complaint that it "'relied upon'" upon its internal investigation as cause to terminate the defendant. *Id*. at *22. Of course the defendant in an employment dispute needed access to information about the internal investigation that the plaintiff was relying on to justify its termination of the defendant.

---

[4] In addition to *Reitz*, the State relies on two other decisions where a party waived privileges by affirmatively relying on the adequacy of its response to sexual harassment allegations. In *Angelone v. Xerox Corp.*, the defendant relied on the *Faragher-Ellerth* defense, triggering a privilege waiver. 2011 WL 4473534, at *2-3 (W.D.N.Y. Sept. 26, 2011). And in *Brownell v. Roadway Package Sys, Inc.*, the defendant relied on the adequacy of its investigation in arguing that it "'fully and fairly'" investigated the plaintiff's sexual harassment allegations. 185 F.R.D. 19, 25 (N.D.N.Y. 1999). The same reliance triggering a waiver occurred in the civil rights case of *Hearn v. Rhay*, where the defendants pled an affirmative defense of qualified immunity and, thus, knowingly waived privilege over counsel's advice "germane to the qualified immunity defense [the defendants] raised." 68 F.R.D. 574, 581, 583 (E.D. Wash. 1975).

Here, by contrast, Walgreens has not pled anything about its internal investigation as a defense to Plaintiffs' allegations, and in no way is Walgreens relying on its internal investigation to disprove Plaintiffs' allegations.[5]

Likewise, Walgreens did not make any statements in its Motion to Dismiss that could arguably waive the work product protection. "Work product consists of the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions." *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980). Like the attorney-client privilege, the work product protection is waived only when a party knowingly and voluntarily discloses protected material to the opposing party. *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2007 WL 902273, at *3-4 (E.D. Ky. Mar. 22, 2007). Here, the State has not and cannot show that Walgreens disclosed any of its work product in its Motion to Dismiss, such as excerpts from an investigative report. The State has failed to even suggest how Walgreens might have disclosed work product in the motion.[6] Accordingly, Walgreens has not waived work product protection.

---

[5] The remaining cases cited by the State in order to support its argument are similarly unavailing. Walgreens has not put its privileged communications "at issue" and therefore is not using them as both a "sword" and a "shield," as the State claims. *See Ross v. City of Memphis*, 423 F.3d 596, 604-05 (6th Cir. 2005) (quotation marks omitted) (waiver occurs only when a party "asserts a claim" requiring examination of privileged communications); *S. Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *8 (E.D. La. June 18, 2003) (no waiver because party did not "inject[] [the issue] into [the] litigation") (internal quotations omitted)); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) (defendant waived attorney-client privilege by affirmatively asserting a defense of good-faith reliance on the U.S. Department of Energy's representations and, thus, waiving protections to its "interpretation of various DOE policies and directives").

[6] Walgreens has not disclosed any portions of its investigative report, therefore the State's citation to *Arnold v. City of Chattanooga* is inapposite. 19 S.W.3d 779, 788 (Tenn. Ct. App. 1999) (party waived work product over reports by affirmatively and "selectively us[ing] the reports in a public

### 3. The State Is Improperly Attempting to Force Walgreens to Waive Privilege

The State cannot entrap a party to waive privilege by including allegations relating to a defendant's internal investigation in its Complaint and causing that defendant to assume such facts are true in arguing that the Complaint fails to plead sufficient facts to make out a valid claim.

The attorney-client "privilege serves interests of justice" and, thus, is "worthy of maximum legal protection." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). A waiver of the attorney-client privilege or work product protection must be "knowing and voluntary;" it cannot be accidental or coerced. *See K&S Assocs., Inc. v. Am. Ass'n of Physicists in Med.*, 2011 WL 249361, at *2 (M.D. Tenn. Jan. 26, 2011). Courts have routinely recognized that the government cannot force a private party to waive privilege. *See, e.g., In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 255 (2d Cir. 1986) (The government "may not obtain evidence in violation of a valid privilege established under the . . . common law."); *United States v. Rickets*, 2015 WL 9478136, at *9 (E.D. La. Dec. 29, 2015) ("[T]he Government cannot . . . effect a waiver of the attorney-client privilege, which is Defendants' alone to waive.").

Here, the State is violating these fundamental principles. In moving to compel the disclosure of privileged communications pursuant to an internal investigation, the State has tried to set a trap by pleading the existence of the Company's internal investigation and then—when Walgreens inevitably responded by arguing why it was insufficient to establish liability—crying waiver. Finding waiver here would not only be contrary to law, but also would establish a dangerous precedent. It would enable the government to force waiver of privilege by pleading the

---

relations offensive to convince the City Council and the general public that the acquisition was both economically feasible and beneficial").

existence of an internal investigation and lying in wait for a defendant to challenge the legal sufficiency of those allegations.

Not only should this Court guard against that outcome, but the State, as a government entity, has a responsibility not to seek such an outcome in the first instance. Government entities have a duty to model civil behavior in litigation. *See Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*, 962 F.2d 45, 47 (D.C. Cir. 1992) ("A government lawyer 'is the representative not of an ordinary party to a controversy . . . but of a sovereignty whose obligation . . . is not that it shall win a case, but that justice shall be done'"); *Fudali v. Napolitano*, 283 F.R.D. 400, 402 (N.D. Ill. 2012) (citing *Freeport-McMoRan* for the proposition that "[t]he government's obligation to participate fairly in discovery is no less than that required of non-governmental litigants. Indeed, the case can be made that its obligation is greater."). Granting the Motion would also discourage investigations altogether. If courts send the message that merely mentioning an investigation in a motion to dismiss constitutes a privilege waiver, then companies are less likely to investigate potential misconduct in the first place—an outcome that the government itself surely wishes to avoid, especially when it comes to alleged Medicaid overpayments.

**B.     Walgreens Did Not Waive Privileges When Responding to Interrogatories**

The State has failed to demonstrate that Walgreens knowingly and voluntarily waived privileges when it responded to the State's interrogatories.[7]

---

[7] The State alleges in footnote 3 of the Motion that Walgreens lodged "boilerplate objections to the written discovery requests." In reality, the relevance, overbreadth, undue burden, and proportionality objections to which the State refers were anything but "boilerplate." Instead, Walgreens sought to limit what the State refuses to acknowledge are, in fact, unduly broad and burdensome requests. By way of example, RFP No. 2 required production of "all investigative files and reports prepared by, and documents and factual data compiled by, Walgreen's [sic] Asset Protection Investigation Team" without regard to this case. Because Walgreens' asset protection team works on numerous investigations which have nothing to do with Plaintiffs' allegations, Walgreens rightly objected on relevance and burden, in addition to privilege.

Merely citing a privileged investigation in response to a discovery request does not waive privilege. In *Medpace, Inc. v. Biothera, Inc.*, the district court held that a plaintiff company had not waived privilege when a corporate representative testified that the company acted in a certain manner "'based on advi[c]e of counsel.'" 2013 WL 5937040, at *3 (S.D. Ohio Nov. 4, 2013). The court reasoned that "[o]nly affirmative reliance on the advice of counsel as an aspect of a claim or defense waives the privilege. . . . [A] party must affirmatively use privileged communications to defend itself or attack its opponent in the action before the implicit waiver rule is applicable." *Id.* (quotation marks omitted) (second alteration in original). In other words, merely responding to a question by mentioning the advice of counsel does not waive privilege over the underlying communications between counsel and client.

Here, the State has not identified a single instance where Walgreens responded to a discovery request by referring to advice of counsel, as did the corporate representative in *Medpace*—let alone any instance in which Walgreens has "defend[ed] itself or attacked [Plaintiffs]" by "affirmatively us[ing] privileged communications," which is what is actually required for waiver to occur. 2013 WL 5937040, at *3 (quotation marks omitted). *See also Rhone-Poulenc*, 32 F.3d at 863 ("The advice of counsel is placed in issue where the [party] asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney[-]client communication."); *Plate, LLC v. Elite Tactical Sys., LLC*, 2020 WL 5209303, at *10 (E.D. Tenn. Sept. 1, 2020) (declining to find waiver because "Defendants have not 'interjected the advice of counsel as an essential element of a claim in this case.' . . . Defendants have not asserted an advice of counsel defense, based their counterclaims or affirmative defenses on confidential communications, or placed [the relevant attorney's] legal opinion at issue.").

Instead, the State merely cites a portion of Walgreens' interrogatory responses stating in general terms certain facts which remained true following the Company's internal investigation: (1) Walgreens remained unable to "verify" alleged overpayments; (2) Walgreens could not deem any patients clinically ineligible for the relevant drugs; and (3) Walgreens believed the patients were clinically eligible even if Plaintiffs disputed whether the patients met TennCare's prior authorization criteria. *See* Ex. B to Motion, at 6-7.

Nothing about these basic recitations of Walgreens' position following its internal investigation revealed the contents of any privileged communication or any protected work product. Moreover, Walgreens has not asserted an advice-of-counsel defense and has not in any way relied on any privileged statements in briefing or argument. And even if, hypothetically, Walgreens had affirmatively based its response to a discovery request on the advice of counsel (which it plainly has not), that is insufficient to complete a waiver of privilege. So held the district court in *Nitinol Med. Techs., Inc. v. AGA Med. Corp.*, 135 F. Supp. 2d 212, 213–15 (D. Mass. 2000), when finding a defendant's interrogatory response that it "'relied on the letters written by counsel'" and production of such opinion letters did not waive privileges unless the defendant intended to rely on the advice of counsel in making out a claim or defense.

The State's case citations, in a footnote, fail to salvage its argument concerning Walgreens' interrogatory responses. In *Harvey v. Ranson Golden Horseshoe, Inc.*, the State conspicuously omits that the party had affirmatively asserted a good-faith defense and its reliance on counsel's advice in its responses. 2015 WL 13755073, at *4 (N.D.W. Va. Nov. 20, 2015). It was only after the defendants alleged a "good faith" defense that the defendants in *Harvey* "placed the advice of [its] counsel directly at issue in the factfinding process" such that the court found waiver. *Id.* Indeed, the defendants explicitly stated in their interrogatory responses that they had "consulted

17
Case 2:21-cv-00080-JRG-CRW   Document 113   Filed 04/20/22   Page 17 of 20   PageID #: 2014

with counsel concerning the treatment of [exotic] dancers as independent contractors . . . [and had] consulted with her accountant [regarding the same]." *Id.* (quotation marks omitted) (alterations in original). By contrast, Walgreens has not asserted a good-faith defense and did not invoke a reliance on the advice of counsel.

The same critical flaws exist with the State's reliance on *In re G-I Holdings Inc.*, where the privilege holder asserted a good-faith defense and expressly invoked its reliance on advice of counsel. A group of debtors responded to a contention interrogatory seeking the basis for why they were not liable for certain tax penalties. 218 F.R.D. 428, 433 (D.N.J. 2003). In response, the debtors stated that they were not liable because, in relevant part, they had a "reasonable basis for the tax treatment" and "acted in good faith with respect to any such underpayment in this case." *Id.* (quotation marks omitted). The debtors "further explain[ed] their basis for 'reasonable cause'" by stating they had "consulted with outside legal counsel and other advisers regarding the tax treatment [at issue]." *Id.* (quotation marks and emphasis omitted). The court found waiver because it concluded that the debtors' response "rais[ed] a 'reliance on counsel' defense" and made privileged information "relevant to the penalty issue in this case." *Id.*

Walgreens has not done what the parties in *Harvey* and *G-I Holdings* did that led to waiver. First, Walgreens expressly stated and made clear that its internal investigation was privileged and Walgreens was not waiving privilege. Next, in its responses, Walgreens did not invoke any privileged communications with its counsel about any of the legal issues underlying Plaintiffs' allegations, including the question of whether Walgreens had a repayment obligation to TennCare. Third, in its responses, Walgreens summarized its factual position on the relevant facts in response to an interrogatory asking for factual information, and was careful to make clear it was not waiving privileges. Fourth, unlike in *G-I Holdings*, Walgreens did not make the statements at issue in

18
Case 2:21-cv-00080-JRG-CRW Document 113 Filed 04/20/22 Page 18 of 20 PageID #: 2015

response to a contention interrogatory. Accordingly, Walgreens' responses to the interrogatories did not constitute a waiver of privileges.

## IV. CONCLUSION

The State's motion to compel the production of privileged communications and protected work product is a brazen and frightening attempt to subvert sacred privileges. In law and fact, Walgreens did not waive its privileges and was exceedingly careful not to do so, in light of the grave ramifications of such an action. Given that what the State alleges is so far beyond the pale of what a government actor, much less any litigant, should do in seeking waiver of privileges, and given the frivolous basis for the State's request for waiver and its inability to cite a single case in the country finding waiver based on general references to allegations about an internal investigation in a party's motion to dismiss, Walgreens respectfully requests that the Court deny the Motion and award Walgreens its "reasonable expenses incurred in opposing the [M]otion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). For all of the reasons set forth above, the Motion was not "substantially justified," and, thus, warrants the awarding of expenses to Walgreens. *See id.*

Date: April 20, 2022

Clint J. Woodfin #016346
SPICER RUDSTROM, PLLC
800 S. Gay Street, Suite 1400
Knoxville, TN 37929
Tel: (865) 673-8516
cwoodfin@spicerfirm.com

Respectfully submitted,

/s/ *Reed Brodsky*

Reed Brodsky* (NY Bar #2843019)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-5334
rbrodsky@gibsondunn.com

Jonathan M. Phillips* (DC Bar #989061)
Michael R. Dziuban* (DC Bar #1034156)
GIBSON, DUNN & CRUTCHER LLP

*Attorneys for Defendant Walgreen Co.*
**Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2022, the Clerk of Court was requested to file the foregoing Opposition to State of Tennessee's Motion to Compel. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ *Reed Brodsky*
Reed Brodsky

*Attorney for Defendant Walgreen Co.*