# EXHIBIT H

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

Michael R. Dziuban
Direct: +1 202.955.8252
Fax: +1 202.530.4247
MDziuban@gibsondunn.com

October 13, 2021

<u>VIA ELECTRONIC MAIL</u>

Robert C. McConkey, III, Esq.
Assistant United States Attorney
United States Attorney's Office for the Eastern District of Tennessee
800 Market Street, Suite 211
Knoxville, TN 37902

W. Anthony Hullender, Esq.
Deputy Attorney General
Medicaid Fraud and Integrity Division
P.O. Box 20207
Nashville, TN 37202

Andrew B. Campbell, Esq.
Senior Assistant Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

Re:   <u>Walgreen Co. – Follow Up to September 27, 2021 Meet-and-Confer</u>

Dear Counsel:

On behalf of our client, Walgreen Co. ("Walgreens" or the "Company"), we write to memorialize the meet-and-confer teleconference we held with you on September 27, 2021 (the "Meet-and-Confer"), and to outline our position on the outstanding requests in Walgreens' First Set of Requests for Production of Documents (the "RFPs"), both as discussed during the Meet-and-Confer and otherwise. If this letter does not comport with your understanding of the Meet-and-Confer or the status of any of the RFPs, please inform us of that as soon as possible. Otherwise, please respond on the items set forth below by the dates indicated.

**Objections to Walgreens' Definitions**

During the Meet-and-Confer, we discussed your objections to several of the definitions listed in Walgreens' RFPs. In your objection to Walgreens' definition of "Plaintiffs," you

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Case 2:21-cv-00080-JRG-CRW   Document 116-9   Filed 05/05/22   Page 2 of 11   PageID #: 2193

# GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 2

purported to limit that definition to a shorter enumerated list of agencies. During the Meet-and-Confer, you indicated that you will include the Department of Justice (not just the U.S. Attorney's Office for the Eastern District of Tennessee) among the agencies from which you will seek responsive documents. You also committed to contact other Tennessee state agencies to seek responsive documents if Walgreens provides you a list of such agencies. While we believe it is *Plaintiffs'* obligation to contact *all* potentially relevant agencies for responsive documents, as a professional courtesy we are willing to provide you with the list you requested. **At this time, Walgreens requests that you contact the Tennessee Department of Health and the Tennessee Health Services and Development Agency for responsive documents, and produce any such responsive documents by October 22, 2021.** Walgreens reserves its right to identify additional agencies of either the State of Tennessee or the United States from which we believe you should seek responsive documents.

Regarding your objections to Walgreens' definitions of "Magellan" and "OptumRx" (the "PBMs"), you acknowledged that you have the authority to request responsive documents from Magellan in particular based on a provision in its contract with TennCare. However, you stated you will not guarantee or attest to the completeness of any materials Magellan provides to you in response to our RFPs. As we informed you during the Meet-and-Confer, your position is contrary to your basic discovery obligations, which include the obligation to provide full and complete responsive information that is in your possession, custody, or control *and/or* the possession, custody, or control of your agents, which here include the PBMs. **Given the significance of this issue for purposes of your discovery obligations, that the issue relates to documents at the core of the Complaint, and that you were certain in your position and we are certain in our position, we will be seeking relief from the Court.**

Regarding our requests pertaining to OptumRx specifically, we asked you to confirm (1) exactly when TennCare switched from using Magellan as its PBM to using OptumRx, and (2) exactly when TennCare's disease severity- and sobriety-based prior authorization restrictions on the Four DAAs (as defined in our RFPs) were changed. As we stated, depending on the relative timing of these two developments, we may be willing to consider narrowing our requests for OptumRx-related materials in particular. **Please provide us with responses to these questions by October 18, 2021.** As we stated during the Meet-and-Confer, regardless of the answers to these questions, we will continue to seek documents relating to the reasons for which TennCare switched PBMs (i.e., from Magellan to OptumRx). *See* RFP 25. You agreed to confirm whether those reasons included Magellan's performance as PBM.[1] **Please provide that information by October 18, 2021.**

---

[1] Your response to RFP 24 (documents related to the selection of Magellan as PBM) stated merely that the "Request seeks information that is irrelevant to the substantive issues of this case." In light of your willingness to search for documents related to the selection of OptumRx,

GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 3

**Privilege Log**

In connection with several RFPs, including RFP 1, you objected to the RFPs because, among other reasons, the RFPs sought privileged information. Consistent with your obligations under Federal Rule of Civil Procedure 26(b)(5)(A), we asked you when you expect to produce a privilege log, and you responded that you would get back to us about the timing for that. ***Please produce the log no later than October 25, 2021.*** We understand that certain responsive privileged materials may be identified in the course of your collection of documents, such that your log may have to be supplemented in the future. We have no objection to that, provided supplementation is completed in a timely fashion. We are confident, however, that the government's pre-litigation investigation—which began over five years ago—was more than sufficient to enable privilege determinations over responsive materials collected during that investigation. Logging of those materials can and should be completed immediately.

**Scope of Responsiveness**

We also asked you to identify, for several RFPs, what other documents exist that relate to the RFP but that which you have determined are not subject to production. In the context of RFP 1, for example, we asked you to tell us what other relevant documents exist beyond the document categories explicitly enumerated in your Response, and whether you intend to produce such additional relevant documents. You asked us to propose search terms that you can use to conduct searches for responsive electronic communications. We sent you proposed search terms via email on October 6, 2021, but still have not received your feedback on them. ***By October 15, 2021, please provide that feedback, along with a list of the custodians and document repositories whose data you propose to search using the terms, and any date limitations you propose to apply.***

We also reiterate our request during the Meet-and-Confer that you provide us with comprehensive information about what categories of non-privileged documents exist that are relevant to our RFPs, and advise as to whether you plan to produce those documents. By way of example only, the chart below contains a non-exhaustive list of RFPs, the scope of your responses, and the gaps that remain in the information you have provided regarding what

---

you can no longer credibly claim that documents related to the selection of Magellan—the PBM that reviewed the prior authorization requests at issue in this very case—are irrelevant. We accordingly ask that you withdraw your objection to RFP 24. ***Please confirm your position on this by October 18, 2021.***

# GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 4

responsive materials exist and will be produced. **By October 22, 2021, please provide information regarding the gaps indicated.**

Similarly, we reiterate our request that you *provide us with a detailed explanation of (1) what information sources you have searched for responsive materials to date, and (2) what additional sources you plan to search in continuing to search for documents responsive to the RFPs. Please provide that explanation by October 22, 2021.*

| RFP No(s). | Scope of Government's Response | Gap(s) Remaining |
|---|---|---|
| 1 | "Plaintiffs are compiling for production the following [16 enumerated categories of] documents." | Responsive materials not covered by the 16 enumerated categories. |
| 2, 3, 4 | "[S]*ee* Response to Request #1, *supra*." | Responsive materials not covered by 16 enumerated categories in Response to RFP 1.[2] |
| 5 | "[S]*ee* Response to Request #1, *supra*, which includes documentation pertaining to the content of the PDL, together with any revisions thereto, as related to the treatment of Hepatitis C for the time period of October 2014 through June 2016." | Responsive materials not covered by PDL-related document categories listed in Response to RFP 1.<br><br>Responsive materials concerning the period from January 1, 2010 to the |

---

[2] Regarding RFP 2 in particular, we asked during the Meet-and-Confer that you search for and produce the presentence report ("PSR") and psychological report that were prepared in connection with the Reilly Case, which you agreed to do. The PSR was filed under seal at docket entry #9 in the Reilly Case and remains under seal. Based on the sentencing transcript, our understanding is that the psychological report was prepared and submitted to the Court under seal at some point between the January 30, 2017 and June 26, 2017 iterations of the sentencing hearing. *See* Sent. Tr. 2:14-15 (June 26, 2017) (Reilly counsel referring to "the psychologicals that Your Honor requested" and stating that they "are under seal"). We expect, but are not certain, that docket entry #25 (docketed simply as "Sealed Document") represents the psychological report. Our request for the report includes any sealed motions filed by either party, and any sealed orders or other papers issued by the Court and/or Probation and Pretrial Services, concerning the report. **Please inform us by October 15, 2021 whether you have identified documents responsive to RFP 2.**

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 5

| RFP No(s). | Scope of Government's Response | Gap(s) Remaining |
|---|---|---|
|  |  | present, and not just the "period of October 2014 through June 2016." |
| 7 | "[S]ee Response to Request #1, *supra*, which includes documentation pertaining to the PDL clinical criteria, together with any revisions thereto, as related to the treatment of Hepatitis C for the DAAs at issue for the time period of October 2014 through June 2016." | Responsive materials not covered by PDL-related document categories listed in Response to RFP 1.<br><br>Responsive materials concerning the period from January 1, 2010 to the present, and not just the "period of October 2014 through June 2016."<br><br>Responsive materials concerning Other DAAs and Non-DAAs (both terms as defined in the RFPs). |
| 8 | "[S]ee Response to Request #1, *supra*, which includes documentation pertaining to the proposed PDL clinical criteria as related to the treatment of Hepatitis C for the DAAs at issue for the time period of October 2014 through June 2016." | Responsive materials not covered by PDL-related document categories listed in Response to RFP 1.<br><br>Responsive materials concerning the period from January 1, 2010 to the present, and not just the "period of October 2014 through June 2016."<br><br>Responsive materials concerning Other DAAs and Non-DAAs (both terms as defined in the RFPs). |
| 9 | "[S]ee Response to Request #1, *supra*, which includes documentation pertaining to the proposed PDL clinical criteria as related to the treatment of Hepatitis C for the DAAs at issue for the time period of October 2014 through June 2016. Additionally, Plaintiffs will produce any other documents responsive to this Request | Responsive materials not covered by PDL-related document categories listed in Response to RFP 1.<br><br>Responsive materials concerning the period from January 1, 2010 to the present, and not just the "period of October 2014 through June 2016." |

# GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 6

| RFP No(s). | Scope of Government's Response | Gap(s) Remaining |
|---|---|---|
| | that are not privileged or otherwise protected from disclosure." | Responsive materials concerning Other DAAs and Non-DAAs (both terms as defined in the RFPs). |
| 11 | "[S]ee Response to Request #1, *supra*, which includes documentation pertaining to claims related to the 65 TennCare enrollees at issue." | Responsive materials not covered by claims-related document categories listed in Response to RFP 1.<br><br>Responsive materials concerning the period from 2010 through 2020, and not just the period in which the at-issue claims for these specific patients were submitted. |
| 15 | "[S]ee Response to Request #1, *supra*, which includes documentation pertaining to the PDL clinical criteria as related to the treatment of Hepatitis C for the DAAs at issue for the time period of October 2014 through June 2016." | Responsive materials not covered by PDL-related document categories listed in Response to RFP 1.<br><br>Responsive materials concerning the period from January 1, 2010 to the present, and not just the "period of October 2014 through June 2016." |
| 16 | "Plaintiffs will produce any documents responsive to this Request that are not privileged or otherwise protected from disclosure, and that are related to the Kingsport Specialty Pharmacy." | Responsive materials related to the Four DAAs (as defined in the RFPs) but not related directly to the Kingsport Specialty Pharmacy. |
| 18 | "Plaintiffs are unaware of any responsive documentation pertaining to OptumRx." | Responsive materials relating to Magellan. |

**By October 15, 2021, please also let us know your position on the draft stipulated protective order we sent you on October 6, 2021.** We note that many categories of documents enumerated in your Responses and Objections are not ones that you indicated could only be produced once a protective order is entered. *See, e.g.*, Resp. to RFP 1, at items 4 through 15.

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 7

There is no reason whatsoever for continued delay in production of such documents. ***Please produce them by October 18, 2021.***

**Materials Related to CMS Release No. 172**

You confirmed during the Meet-and-Confer that you are not taking the position that documents relating to CMS Release No. 172 are categorically non-responsive.

**Materials Related to Drugs Other than the Four DAAs**

During the Meet-and-Confer we discussed your objections to several RFPs on the basis that they seek information about drugs not at issue in this litigation. Based on our discussion, we understand that these objections were based on your assumption that the term "Non-DAAs" included non-Hepatitis C drugs. When we clarified that that is not the case and pointed you to the definition of that term in the RFPs, you agreed to review your responses in light of our clarification. We appreciate that and continue to believe that information about Hepatitis C drugs other than the Four DAAs is relevant. For example, information about the development and enforcement of prior authorization criteria similar to those at issue in this case, but for other Hepatitis C drugs, is relevant to FCA materiality. ***Please let us know by October 18, 2021 whether you will withdraw your objections to the scope of the medications about which information is sought.*** See RFPs 5, 7, 8, 9, 10, 13, 14, 16, 23.

**Relevant Time Period**

In the context of certain of the RFPs, we also discussed the reasons for which we are seeking materials dating back to 2010. For example, RFP 5 seeks materials relating to the content, development, implementation, application, and revision of the TennCare PDL as related to Hepatitis C drugs and concerning the period from January 1, 2010 to the present. We explained that we view documents from the period in which the Four DAAs were under development as relevant to decisions TennCare made about its criteria for covering those drugs. You agreed that such documents are relevant. On that basis, we understand that your searches for documents responsive to RFP 5—and similar RFPs[3]—will cover the full period from January 1, 2010 to the present.

Similarly, regarding RFP 6, trainings going back to 2010 are relevant because guidance given to reviewers when the drugs were under development shows what Magellan itself—as

---

[3] RFP 7 (coverage criteria and their development, selection, implementation, and application); RFP 8 (effect of coverage criteria on access to medications); RFP 9 (coverage criteria's compliance with Section 1927 of the Social Security Act); RFP 10 (federal financial participation requirements).

# GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 8

TennCare's agent—deemed significant when it came to coverage criteria. As we noted during the Meet-and-Confer, it is also possible that Magellan employees who reviewed prior authorizations for the Four DAAs between October 2014 and June 2016 were initially trained at earlier times outside of that period. During the Meet-and-Confer, you agreed to produce documents responsive to RFP 6 notwithstanding your objection to that RFP's stated time period.

Regarding RFP 14, we noted that you had objected to the RFP on the basis that it did not have a temporal limit. We reminded you that the instructions and definitions included in our RFPs included a default timeframe for the RFPs, and asked that you reconsider your objection in light of that. You agreed to do so; ***please let us know your position by October 18, 2021***. We assume you will, likewise, withdraw your objections to all other RFPs where you objected to the lack of a "temporal scope," or to what you interpreted as an overbroad temporal scope, notwithstanding General Instruction 2 in our RFPs. *See* Responses to RFPs 12, 13, 15, 16. ***Please confirm by October 18, 2021 whether that is the case.***

You also objected to RFP 17, on the basis that it seeks documents "outside of the relevant timeframe," insofar as its stated time period is January 1, 2010 to the present. This objection is unfounded for reasons similar to those discussed in the context of RFPs 5 and 6: internal policy developments concerning the investigation and pursuit of Reverse FCA and Reverse TMFCA cases are not relevant merely to the extent they occurred in the October 2014 – June 2016 timeframe. For example, to the extent that the government's policies concerning such cases were formulated prior to October 2014, documents reflecting that are relevant to the application of the policies after October 2014. ***Please confirm by October 18, 2021 whether you will withdraw your objection to RFP 17's stated time period.***

**Remaining Issues Regarding Specific RFPs**

Regarding RFP 11, you agreed to seek information from TennCare about the volume of available data within the scope of the Request. Per our discussion, we have also considered whether we would be willing to narrow the scope of RFP 11—for example, by seeking data related to Hepatitis C patients only. At this time, we are not prepared to narrow the scope of the Request. As we explained during the Meet-and-Confer, having data for all patients will allow us to evaluate the incremental cost of care associated with Hepatitis C patients as compared to non-Hepatitis C patients. The total cost of care impact associated with Hepatitis C cannot be isolated if not analyzed in the context of both Hepatitis C and non-Hepatitis C patients. As for the burden of RFP 11 on the government, that burden will be lower if all TennCare must do is copy the entirety of its medical/pharmacy claims and membership database for the time period requested, rather than undertake a more manual process of selecting specific patients, patient types, disease states, and so forth. ***Please let us know your position on RFP 11 by October 22, 2021.***

# GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 9

Regarding RFP 17, we clarified that we are looking for documents such as policy guidance or enforcement guidelines circulated within the Department of Justice, the U.S. Attorney's Office for the Eastern District of Tennessee, or the Tennessee Attorney General's Office relating to the handling of Reverse FCA (and/or Reverse TMFCA) cases. **By October 22, 2021, please let us know whether any documents responsive to RFP 17 exist and when you expect to produce them.**

Finally, your responses to RFPs 21 and 26 indicate that you are refusing to produce materials related to other investigations relating to any of the allegations in this case (RFP 21), as well as materials received pursuant to any request or legal process (such as a subpoena or Civil Investigative Demand ("CID")) you have issued related to the allegations in this case (RFP 26). We understand you intend to assert privilege over certain materials otherwise responsive to these RFPs, but your refusal to produce documents received from third parties in particular is unfounded. If, for example, you issued a subpoena or CID to a third party in the course of your pre-litigation investigation, and received documents in response to that subpoena that are relevant to this case, those documents are not privileged and are subject to production. **By October 22, 2021, please confirm whether any such materials exist and when you expect to produce them.**[4]

\*   \*   \*

We look forward to hearing from you on the points noted above. We can make ourselves available for a further discussion by phone, if you wish.

---

[4] Your response to RFP 27 (seeking affidavits, declarations, statements, and recordings related to the allegations in the Complaint, along with documents related to such materials) is similarly deficient. While we understand you to be claiming privilege over notes and reports of interactions with witnesses, verbatim records of statements by witnesses—such as transcripts, audio or video recordings, sworn written statements, and affidavits—are not privileged. *See Trustees of Plumbers & Steamfitters Loc. Union No. 43 Health & Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023, 1028 (E.D. Tenn. 2008) ("[S]worn witness statements and affidavits are evidence; they are a witness's own statement and are not protected by the work product doctrine."); *Nam v. U.S. Xpress, Inc.*, 2012 WL 12840094, at \*3 (E.D. Tenn. May 15, 2012) (applying *Crawford* to videotaped statements). **By October 22, 2021, please confirm whether any such materials exist and when you expect to produce them.**

GIBSON DUNN

Robert C. McConkey, III, Esq., et al.
October 13, 2021
Page 10

Sincerely,

Reed Brodsky                    Michael R. Dziuban