# EXHIBIT I

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Michael R. Dziuban
Direct: +1 202.955.8252
Fax: +1 202.530.4247
MDziuban@gibsondunn.com

January 4, 2022

VIA ELECTRONIC MAIL

Robert C. McConkey, III, Esq.
Assistant United States Attorney
United States Attorney's Office for the Eastern District of Tennessee
800 Market Street, Suite 211
Knoxville, TN 37902

W. Anthony Hullender, Esq.
Deputy Attorney General
Medicaid Fraud and Integrity Division
P.O. Box 20207
Nashville, TN 37202

Andrew B. Campbell, Esq.
Senior Assistant Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

Re: *United States & State of Tenn. v. Walgreen Co.*, No. 21-cv-00080-JRG-CRW (E.D. Tenn.) – Discovery Deficiencies

Dear Counsel:

      We write regarding Plaintiffs' responses to Walgreens' written discovery requests, as well as persistent deficiencies in Plaintiffs' other discovery responses and efforts to date. These material deficiencies are in violation of the Court's Scheduling Order. We need these deficiencies to be cured by no later than January 17, 2022, or we will have no choice but to seek relief from the Court. Please let us know your availability this week for a telephone conference to discuss these deficiencies.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**Interrogatory Responses**

The government's responses to Walgreens' interrogatories are concerning—and lacking—in several important respects. We address the State's responses, and the United States' responses, separately in what follows.

*State's Responses*

Item 5 in the "Specific Objections to Definitions" objects to the inclusion of Magellan and OptumRx in the interrogatories' definition of "you." This objection is improper for all of the reasons we stated during the September 27 meet-and-confer, and in our opening and reply briefs in support of our motion to compel.

The State's response to Interrogatory No. 3 improperly asserts that information regarding the identities of individuals who assisted in the preparation of the interrogatory responses is protected by the work product doctrine. There is no work product protection for the identities of such individuals, just as there is no privilege or work product protection for the identities of individuals engaged in privileged communications. Nevertheless, in the interest of narrowing the issues in dispute between the parties, we are willing to modify Interrogatory No. 3 at this time to seek the identities of all persons ultimately responsible for the information provided in the State's responses to the interrogatories, reserving our right to seek the identifies of all individuals later. Providing information in response to our modified request does not implicate the concerns the *Bose* court cited because it does not require the State to reveal "the persons whom [it] interviewed when preparing for litigation." 2017 WL 4479258, at *9 (W.D. Tenn. Oct. 6, 2017). Obviously, the fact that a particular person is ultimately responsible for a particular piece of information does not necessarily mean that the State interviewed that person in order to obtain the information, and this fact is necessary to Walgreens' defenses and not readily obtainable from another source.

The State's responses to Interrogatory Nos. 4 and 5 improperly assert that the identities of persons who reviewed prior authorization and related materials after "the time the documents and/or claims were submitted" are protected by the work product doctrine. We respectfully disagree. Nevertheless, the State misreads the intent behind the relevant language in Interrogatory Nos. 4 and 5. Walgreens is not seeking the identities of persons whom the State relied on to prepare its case for litigation. Instead, Walgreens is seeking factual information about who—if anyone—reviewed documentation in the course of any efforts the State undertook to determine whether the claims were proper and/or whether it had overpaid for the relevant drugs for the relevant patients. To the extent any such review occurred in the ordinary course of State business, apart from preparation for litigation—or even if it later formed the basis for litigation, having originally occurred in the ordinary course—Walgreens is entitled to that information.

The State objects to Interrogatory No. 8 on the basis that the timeframe provided (January 1, 2010 to the present) is "far beyond the relevant period." However, as discussed

2

GIBSON DUNN

during the September 27 meet-and-confer (by reference to a similar objection to one of our RFPs), to the extent Magellan reviewers were hired before the start of the relevant period and their training and/or receipt of relevant information relating to this action occurred since January 1, 2010, such information is relevant and discoverable. Moreover, information regarding Magellan's training practices since the end of the "relevant period" goes to materiality and to issues surrounding CMS Release No. 172. Finally, FDA approval of direct-acting antiviral medications ("DAAs") for Hepatitis C started in 2011, and those first-generation DAAs included at least one drug (Victrelis) that appeared on TennCare's Preferred Drug List starting in 2015.[1] For all of these reasons, your objection to the timeframe of Interrogatory No. 8 is meritless and the government must amend its response accordingly.[2]

The State's overbreadth, vagueness, and irrelevance objections to Interrogatory No. 11 are improper. Walgreens naturally does not know the names of any working groups or committees that were internal to TennCare and that had responsibilities related to prior authorization criteria for Hepatitis C Medications; the very purpose of discovery is to find out such information uniquely in the State's possession. And the information is relevant given the relevance of, among other things, CMS Release No. 172 and the validity of TennCare's coverage criteria either as written or as applied. Accordingly, the government must supplement its response to Interrogatory No. 11 as soon as possible by providing details of any additional groups that existed and that are within the scope of the request, or with a statement that no such groups exist beyond the PAC.

The State's response to Interrogatory No. 14 indicates that "[t]he State *believes* that" a particular TennCare provider notice "reflects th[e] change in the prior authorization criteria" from "F3" to "F2" (emphasis added). The government must confirm who—if anyone—has *actual knowledge* of, and can therefore *confirm*, whether that document reflects the change indicated.

The State's response to Interrogatory No. 15 is deficient. We understand that the State believes Release No. 172 does not apply to TennCare, but Walgreens is entitled to take discovery of that position and, in any event, that does not answer the question—posed squarely by this interrogatory—of whether TennCare *did* anything in relation to Release No. 172, and if so, what it did. The government must therefore amend its response to Interrogatory No. 15 as soon as possible to reflect: (1) whether TennCare received and/or reviewed Release No. 172, and if so, when; and (2) what actions, if any, TennCare took related to Release No. 172 after receiving and/or reviewing that document, and when it took those actions. If your

---

[1] *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/202258lbl.pdf.

[2] For similar reasons, the State should withdraw its objections to the timeframes of Interrogatories No. 9, 11, 12, and 14, and supplement its responses to those Interrogatories accordingly.

3

position is that TennCare took no action of any kind in relation to Release No. 172 after becoming aware of it, the government should so state in its amended response.[3]

The State's response to Interrogatory No. 18 is deficient and must be amended to include the information requested in what follows.

*First,* we do not understand your statement that the Records Disposition Authorizations ("RDAs") cited in the response encompass "State records that are relevant to this litigation." Is it the State's position that these RDAs cover *all* records relevant to this case? Our review of the explanations you provided of these RDAs leads us to believe that they do not cover documents such as prior authorization records and documents concerning the development, implementation, and review of prior authorization requirements. Please confirm as soon as possible whether you believe that these RDAs cover the full range of relevant records in this litigation. In addition, the government must produce the RDAs themselves as soon as possible.

*Second*, it is not clear to us from your response whether the "prior litigation" holds to which certain custodians were subject prior to December 3, 2020, and which you state resulted in "all emails (and attachments thereto)" being "preserved automatically, without regard to topic or subject matter," also included preservation of the custodians' network drives, hard drives, text messages and other e-communications, and hard-copy files, and if so with what scope. Please provide this information as soon as possible. Please also confirm when exactly the "prior litigation holds" for these custodians were implemented (information that your response to Interrogatory No. 18 does not currently include).

*United States' Responses*

The United States' work-product objection to Interrogatory No. 3 is improper for all the reasons set forth above in relation to the State's response to the corresponding interrogatory directed to it. As above, reserving all rights, we are willing to modify Interrogatory No. 3 at this time to seek the identities of all persons ultimately responsible for the information provided in the United States' responses to the interrogatories.

To the extent the United States' responses to Interrogatories No. 4 and 5 have withheld information on the basis of privilege or the work product doctrine, the responses are deficient for reasons similar to those explained above in the context of the State's responses. Additionally, the government's invocation of Federal Rule of Evidence 408 to bar discovery of information about who from DOJ reviewed relevant records is improper. Rule 408 governs admissibility, not discoverability, and as such is not a proper basis for withholding information

---

[3] Similarly, please advise whether you intend to produce additional documents—beyond those cited in your response to Interrogatory No. 13—related to TennCare's efforts to "continually review[] its prior authorization requirements to comply with its waiver and federal law," to which efforts you refer in your response to that Interrogatory.

in response to Interrogatory No. 5. Please advise as soon as possible whether you will reconsider your position on either of these Interrogatories.

The government's response to Interrogatory No. 8 is deficient. Rather than provide the identities of individuals with knowledge of federal financial participation ("FFP") in TennCare, you have instead provided us with basic information about FFP as a general matter. This does not answer our question (and even if we had asked for a description of FFP, your response would be deficient for its lack of specificity to TennCare, among other issues). As soon as possible, the government must provide an amended response to Interrogatory No. 8 that *actually identifies* persons with relevant knowledge.

Your response to Interrogatory No. 13 states that "as of the date of these responses the United States has not identified any responsive, nonprivileged communications" between CMS/HHS and either Plaintiff relating to Release No. 172. Please advise as soon as possible whether you have identified privileged communications that are responsive. The government must provide a privilege log as soon as possible that sets forth your claimed bases for withholding those communications. Please also let us know immediately which custodians and document repositories you have searched, and which you still are in the process of searching, in an effort to identify communications responsive to Interrogatory No. 13.

Interrogatory No. 14 seeks the identities of "all persons from whom you sought or obtained documents, communications, and/or other information in the course of any investigation or prosecution related to the subject matter of this Action and that preceded this Action, including but not limited to the Reilly Case." The United States' response states that information was obtained "from multiple sources, including (a) physicians (or their staff) whose names appear on the prior authorization forms and supporting medical documents for the 65 TennCare enrollees at issue, (b) Walgreens personnel, (c) Magellan personnel, (d) Amber Reilly, and (e) Brianna Brock Blankenbeckler." However, the response then provides a non-exhaustive list of specific individuals that does not include any Walgreens personnel or any specific healthcare providers. As soon as possible, the government must provide an amended response that identifies the specific Walgreens personnel and the healthcare providers referred to in general terms elsewhere in the existing response, along with any other specific individuals excluded up to now based on the purportedly non-exhaustive nature of the response.

Your refusal to answer Interrogatory No. 15 on attorney-client privilege and work-product grounds is improper. The interrogatory does not seek communications conveying document hold instructions to custodians, so as to implicate the attorney-client privilege. Nor does the interrogatory seek documents or tangible things that constitute any hold notice itself, or any other documents created in relation to a hold notice, so as to implicate work product prepared in anticipation of litigation. Instead, the interrogatory simply seeks factual information regarding the timing and parameters of any document holds that were implemented. Such information is discoverable under the Federal Rules, a fact which your State counterparts have recognized in providing their response to the corresponding

5

interrogatory directed at the State. You, too, must produce the information sought as soon as possible by amending your response to Interrogatory No. 15. *See also* Fed. R. Civ. P. 37(e); *Beaudry v. TeleCheck Servs., Inc.*, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013) ("The fact of a litigation hold is not privileged or protected by work product.").

**Responses to Walgreens' Second Set of Requests for Production**

The government's December 8, 2021 responses to Walgreens' Second Set of Requests for Production raise a number of issues. Without waiving our ability to raise additional concerns about the responses during a future telephone conference, we note the following key points.

The responses state that "[t]he United States of America asserts the investigative files and law enforcement privileges, and the attorney work-product privilege, with regard to the investigative files of the Tennessee Bureau of Investigation and the contents thereof. . . . Accordingly, Plaintiffs shall not disclose the substance or content of these files." Responses at 3. This blanket assertion of privilege is insufficient under Federal Rule of Civil Procedure 26(b)(5)(A). As set forth in greater detail below, there is no excuse for further delay in production of Plaintiffs' privilege log, especially insofar as it concerns materials of which the government has long been aware by virtue of its multi-year investigation prior to bringing this lawsuit. As the TBI files fall squarely into that category, we expect that the government will log them immediately.

Your response to RFP 31 reflects that the State's production of drug rebate data is subject to any objections from the manufacturers of the Relevant Drugs. Please confirm that you have advised the manufacturers of the existence and provisions of the Protective Order entered by the Court in this case. It is our position that production of responsive data is required (among other reasons, because information about rebates and other offsets is patently relevant to the quantum of the harm the government claims to have suffered in this case), and that the Protective Order affords protections sufficient to ensure confidentiality pursuant to the terms of the rebate agreements referenced in the response to RFP 31.

Your response to RFP 32 suggests you are refusing to produce any actual rebate agreements between CMS and specific manufacturers, and instead merely provides a link to CMS's standard rebate agreement template. Your response to RFP 33, in turn, states that "[t]he State and CMS have no other pricing arrangements" with the manufacturers of the Four DAAs "aside from the rebate agreements referenced in Response No. 32, and the supplemental rebate agreements previously produced by the State." Please confirm as soon as possible whether the "rebate agreements referenced in Response No. 32" indeed cover the Four DAAs, and whether they resulted in any offsets to amounts paid by TennCare (and/or to portions of those amounts covered by CMS) for the Four DAAs for the Patients at Issue, beyond the rebates covered by the data you have agreed to produce in response to RFP 31.

# GIBSON DUNN

Your Response to RFP 34 (which seeks communications related to the Four DAAs' therapeutic advantages) states that "TennCare has not located any documents responsive to this Request apart from the TennCare Pharmacy Advisory Committee meeting minutes previously produced." Please confirm as soon as possible where you have searched for materials responsive to this RFP. Also, please advise as soon as possible whether the United States will produce materials responsive to this RFP, given that it seeks communications "between TennCare **and/or HHS**, on the one hand, and any pharmaceutical manufacturer, on the other hand" (emphasis added). Please also advise whether either Plaintiff has limited its searches for responsive information on the basis of your objection that the therapeutic advantages of the Four DAAs are "wholly irrelevant to the issues of this case" in light of the TennCare Waiver (*see* Response to RFP 34). Such a limitation would be completely improper. The applicability of the TennCare Waiver is a live issue in this case, and your own position on the Waiver confirms that if the Waiver does not apply, then Section 1927(d)(4)(C) of the Social Security Act *does* apply with full force to TennCare. Plaintiffs cannot have this case both ways by invoking the Waiver but then withholding from discovery the very information that could dispose of the government's case in the event the Waiver is deemed inapplicable.

Your response to RFP 35 states that the request "pertains only to issues addressed in" Release No. 172. That is erroneous. The RFP plainly seeks communications "relating to access to any of the Four DAAs by TennCare enrollees, including but not limited to any such restrictions on such access imposed by TennCare." As such, the RFP is relevant to the TennCare Waiver, which **Plaintiffs themselves** have put at issue in this case, and which you have repeatedly claimed justifies the "restrictions on . . . access" to the Four DAAs that TennCare imposed via its prior authorization requirements. Accordingly, please confirm as soon as possible where you have searched for materials responsive to this RFP, and whether you have limited those searches in light of your (misplaced) relevancy objection. Similarly, the response indicates that "[t]he United States does not believe that it would have any responsive communications because manufacturers do not normally identify specific states in communications with CMS." This "belie[f]" is insufficient to excuse the United States from its obligation to search for responsive communications. And even if the only relevant communications were ones that did not identify specific states, communications related generally to fibrosis- and sobriety-based restrictions on access to the Four DAAs would be squarely responsive to the RFP, in that those are the very "restrictions on . . . access imposed by TennCare." Please confirm as soon as possible whether the United States will conduct searches for materials responsive to this RFP.

**United States' Discovery Efforts**

While we appreciate the United States' December 14, 2021 production, we are concerned at the United States' relative lack of engagement on our other discovery requests and meet-and-confer topics to date. We request that the United States respond immediately on the following items, on which we have heard from the State of Tennessee but not from the United States. To the extent the December 14 production contains documents relevant to any

7

of these items, please advise whether those documents are the extent of what the United States intends to produce in response to the requests in question.

- What efforts are underway to search for responsive emails and other documents, as well as what the hit counts are for our search terms, and based on what custodians and document repositories.

- Whether the United States, like the State, withdraws its objections to our RFPs to the extent they relate to non-DAA drugs and to DAAs other than the four DAAs at issue in this case.

- Whether the United States is using the timeframes set forth in our RFPs in its searches for responsive documents.

- Whether the United States has identified any documents responsive to RFP 16, and if so when we can expect those documents to be produced.

- Whether the United States has located any documents responsive to RFP 17, and if so when we can expect those documents to be produced.

- Whether the United States has searched for and identified any documents responsive to RFP 24, and if so when we can expect those documents to be produced.

- Confirmation that the United States has searched the following for responsive documents, and confirmation of the search terms used and custodians / date ranges searched:

    o CMS/HHS

    o Main Justice

    o FBI (if applicable)

- Whether the United States intends to produce the Reilly pre-sentence report ("PSR") and psychological report, and if so, when.

- Whether the United States has identified additional documents responsive to RFP 2, beyond the PSR and the psychological report.

- The United States' position on RFPs 21, 26, and 27, in particular what non-privileged materials exist and when you expect to produce them.

**Privilege Issues**

During our September 27 meet-and-confer, you stated that you would get back to us about when the government expected to produce its privilege log. ***Over three months*** have passed since then, and you have not provided a timeframe for production of the log, much less produced an actual log. Further delay is unacceptable. We find the delay to date particularly concerning given what we understand to be the government's blanket assertion of privilege over its investigative files, including documents received from third parties in the course of the investigations that preceded this litigation. *See, e.g.*, T. Hullender email to R. Brodsky (Nov. 3, 2021) ("Any documents the State possesses related to these matters [i.e., the WDVA and VA AG investigations] – primarily emails between attorneys for these entities and attorneys from the Tennessee AG's Office [–] are protected by the work product doctrine and common interest privilege."); Gov't's Resp. to Walgreens' RFP No. 21 (indicating refusal to produce responsive materials on the basis of the attorney-client privilege, the "investigative files or law enforcement privilege," the work product doctrine, and the "joint prosecution/common interest doctrine").

While we understand that you may need to supplement your privilege log as you collect and review additional documents, there simply is no excuse for delay in logging documents collected to date. This is particularly true given that the government's pre-litigation investigation began over five years ago and the government thus has had ample time to arrive at a view of the privilege status of documents that were collected or created during the investigation and that are now responsive to our RFPs. At the very least, any such documents – as well as any documents or portions thereof that were withheld for privilege from your productions to date – must be logged immediately.

Finally, on the subject of the November 4, 2021 production in particular, document TN-TEMP008272 (a February/March 2019 email exchange between Mr. McConkey and Bill West, Walgreens' prior external counsel) contains redactions we believe are improper. As best we can tell, the redactions may concern settlement offers, such that you are essentially claiming that FRE 408 material is not discoverable even by the parties to the underlying settlement discussions. But the government has brought Reverse FCA claims on the grounds that Walgreens knowingly retained overpayments during a period that included the very settlement discussions to which the email in question relates. The government cannot have this case both ways by bringing those claims and then attempting to shield the settlement discussions themselves from discovery. Moreover, the Protective Order (ECF 52) affords protection from public disclosure of FRE 408 material while simultaneously protecting the parties' interests in full disclosure between themselves of relevant, non-privileged information consistent with the rules and purposes of discovery. Designating FRE 408 material "CONFIDENTIAL" under the Protective Order (which we noticed you did in addition to redacting the document) is sufficient to address any concerns you may have about public disclosure of settlement communications without the additional overbroad withholding of the communications that your redactions reflect. As soon as possible, please produce an unredacted copy of this document.

9

**GIBSON DUNN**

**ESI Searches**

On November 10, 2021, Mr. Bangle stated that: (1) he would "let [Gibson Dunn] know the results for [its] revised search strings"; (2) he was "trying to get an estimate" of the timeframe for collecting and searching additional email custodians who were not part of the State's original data pull; and (3) he was "working . . . now" on "TBI's information" per our request that TBI custodians also be searched. We did not hear further from you until December 6, when Katherine Redding from the Tennessee AG's office left Mr. Dziuban a voicemail about a question regarding one of Walgreens' proposed search strings, and, in a follow-up telephone conversation on December 7, informed Mr. Dziuban that she expected to have an update on the status of email productions by the end of that week. We did not receive any such update, and from our review of Plaintiffs' December 14 production, it does not appear to us that the production includes email data. Please provide us with all of the foregoing information, and begin making email productions, immediately.

Moreover, Mr. Bangle stated that "[t]he ESI for each custodian is that person's email and that person's individual slices of shared drives." Please clarify what is meant by an "individual slice[]" of a "shared drive[]." We ask that your ESI searches also include files stored on individual custodians' hard drives and any employer-issued phones they may have used. Please confirm that you are searching those document sources, as well.

We also noted that Mr. Bangle's November 10 email listed 20 custodians under the heading "Walgreen Co. – Hep C Custodians Separated; never issued Walgreen Co. – Hep C lit hold memo." We are extremely concerned at the large number of custodians who apparently were "never issued" a litigation hold in relation to this matter, particularly because several of the custodians are former Directors of TennCare and approximately 14 more apparently are former members of the Pharmacy Advisory Committee ("PAC"). Based on the heading under which these custodians were listed in Mr. Bangle's email, we understand that the custodians may no longer be affiliated with TennCare. That does not excuse the government from its obligation to preserve those custodians' documents, however, as soon as litigation is reasonably anticipated. Please confirm as soon as possible whether these custodians have been issued litigation holds and whether they have data available to be searched.

Finally, in Mr. Hullender's November 12 email correspondence he stated that the State's "electronic searches of TennCare will include emails between TennCare employees and persons on the TennCare Advisory Committee and Drug Utilization Review Board. The members of the Committee and the Board are private citizens and we do not have access to their computers." Your position is plainly incorrect. The PAC is a creature of state statute and sits within the State's Department of Finance and Administration. *See* Tenn. Code Ann. § 71-5-2401(a) ("There is established *in the department of finance and administration* a state TennCare pharmacy advisory committee" (emphasis added)). And by law, "[t]he pharmacy director and medical director of TennCare," "the chair of the health committee of the house of representatives, or the chair's designee," and "the chair of the health and welfare committee of the senate, or the chair's designee" "serve as ex officio members" of the PAC. *Id.* at § 71-5-

10

2401(b)(5). The ESI of all of these custodians therefore is patently within the State's possession, custody, and control. In any event, the State has already conceded its ability to access the ESI of PAC members—including the non-ex officio members appointed by the governor, the speaker of the senate, and the speaker of the house of representatives—by including approximately 14 members of the PAC on the list of custodians for whom "ESI . . . is being separately harvested." P. Bangle Email to M. Dziuban (Nov. 10, 2021). In light of the foregoing, the ESI of any PAC member that may contain discoverable information must be collected and searched. Please confirm as soon as possible that you are proceeding in this fashion.

**Document Productions That Do Not Require Search Terms**

We have noted multiple times in our correspondence several of our RFPs that we believe do not require (in whole or in part) the application of search terms. *See* RFPs No. 1 (items 5 through 15 the government's response), 6, 9, 10, 16, 22, and 23; *see also, e.g.*, October 20, 2021 email from M. Dziuban to R. McConkey et al.; October 28, 2021 email from M. Dziuban to A. Campbell et al. Please make these productions as soon as possible to the extent you have not already. If there are any RFPs or portions thereof that you believe are covered in full by the government's November 4 and/or December 14 productions, please let us know that as soon as possible.

**Rebate Agreements**

In Mr. Hullender's November 3, 2021 email he stated that the State was searching for additional rebate agreements between TennCare and pharmaceutical manufacturers. The government's November 4, 2021 production contained rebate agreements with only the following companies: AbbVie Inc., Bristol-Myers Squibb, Genentech, Inc., and Gilead Sciences, Inc. Our review of your December 14 production has not identified any additional agreements. As soon as possible, please produce any remaining agreements covered by the searches Mr. Hullender's email referenced.

**RFP 24**

Mr. Hullender indicated in his October 29, 2021 correspondence that the State would produce—in addition to the Magellan PBM contract—the solicitation that led to that contract as well as Magellan's technical submission in support of its bid. We have not identified either of those documents in your November 4, 2021 production, nor in your December 14 production. Please produce these materials, and all other non-privileged documents responsive to RFP 24, as soon as possible. Such documents include, but are not limited to, any communications between TennCare and Magellan related to Magellan's proposed approach to the Quality Assurance program and related trainings referenced in Section A.7.1(j) of the Magellan contract (and in similar provisions in the amendments thereto).

**Outstanding Questions Regarding Scope of Responsive Material**

Nearly three months have elapsed since the letter in which we sought information from you regarding the existence of non-privileged documents outside of the categories you explicitly agreed to produce in your RFP responses, as well as information regarding were you are searching for responsive materials. *See* Oct. 13 Ltr. at 3-7. To date, we have not received this information. Please provide this information as soon as possible.

**OptumRx**

Thus far, it appears your production of documents concerning OptumRx has been limited to responses submitted by prospective PBMs for the contract that ultimately went to OptumRx. RFP 25 (which seeks documents and communications relating to the selection of OptumRx as TennCare's PBM) requires more—including, but not limited to, documents and communications between TennCare and OptumRx relating to the terms of OptumRx's engagement as PBM, the requirements for its role as such, and the reasons for which OptumRx was selected over competing bidders. Please produce these materials immediately.

**"Other DAAs"**

In Mr. Hullender's November 1, 2021 email, he indicated that the State is withdrawing their objections to our RFPs to the extent they seek information regarding non-DAA Hepatitis C medications. Please confirm as soon as possible whether the State is, similarly, withdrawing its objections to our RFPs to the extent they seek information regarding DAAs other than the Four DAAs at issue in this case. And please confirm as soon as possible whether the United States is taking the same position as the State is, on both points.

\* \* \*

We look forward to conferring further regarding the above issues at your earliest convenience.

Sincerely,

Michael R. Dziuban

cc: Reed Brodsky
     Jonathan M. Phillips
     Jillian N. Katterhagen