**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

|   |   |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE, <br><br>     *Plaintiffs*, <br><br>   v. <br><br> WALGREEN CO., <br><br>     *Defendant*. | Case No. 2:21-CV-00080-JRG-CRW |

**UNITED STATES' RESPONSE IN OPPOSITION TO WALGREENS' MOTION TO COMPEL**

Plaintiff United States, by and through Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, submits this response in opposition to Defendant Walgreen Co.'s ("Walgreens") motion [ECF 116] to compel discovery. For the reasons that follow, Walgreens' motion should be denied in its entirety.

**RELEVANT BACKGROUND**

The central facts in this case are relatively limited, straight-forward and are not subject to serious dispute. This is a case about the submission, over a period of just more than two years, of false prior authorization requests for direct acting antiviral (DAA) prescription medications for 65 TennCare enrollees, the submission of falsified medical records and lab reports in support of those requests, and the resulting, improper payment of more than $5.9 million in TennCare benefits to Walgreens for DAAs dispensed to those 65 patients. All the prescriptions at issue were dispensed from Walgreens' specialty pharmacy located at Holston Valley Medical Center in Kingsport, Tennessee. In late 2016, Amber Reilly—Walgreens' former registered store manager at the Kingsport pharmacy—admitted her conduct in submitting and causing the submission of the false prior authorization requests and

supporting records for "at least" 51 of the TennCare enrollees in question.[1] She pleaded guilty in this

Court to healthcare fraud in violation of 18 U.S.C. §§ 1347 and 2.  [Plea Agreement, Doc. 2, No. 2:16-CR-00107-JRG].

Despite the relatively straight-forward nature of the factual allegations, Walgreens has served a multitude of extremely broad interrogatories and requests for production of documents seeking discovery on far-ranging topics, many of which are irrelevant to the claims or any legally viable defenses in the case.  The United States timely provided written responses and objections to Walgreens' requests for production and interrogatories.  Moreover, the United States has produced nearly 9,300 pages of documents obtained in the course of its investigation (in addition to more than 25,000 pages of documents produced by the State of Tennessee), including records from prescribing providers and other healthcare facilities, records from TennCare's pharmacy benefits manager Magellan, records obtained from Walgreens, and records obtained from TennCare.  Discovery is ongoing and the United States expects to produce additional documents.[2]

Now, Walgreens has filed a motion to compel that is as wide-ranging as its discovery requests, seeking to require the United States to provide additional answers and information in response to a host of discovery requests.[3]  In many instances, it is difficult to discern from Walgreens' motion which

---

[1] The United States and Tennessee later discovered 14 additional TennCare enrollees for whom false PA requests and supporting records were submitted.

[2] Although Walgreens complains about the "limited" nature of the United States' production to date, that is in part due to the United States' pending objections, and in part due to the reality that TennCare is administered on a day-to-day basis by the State of Tennessee and its agencies and contractors, rather than the United States.  Accordingly, the bulk of the most relevant information related to the claims and the program requirements and program details are in the possession of the State of Tennessee or its agents.

[3] It is also worth noting that although many of the United States' objections have been pending for 6 months or longer, Walgreens waited until just over a month before the discovery deadline to file a motion to compel the production of documents and information that it contends is paramount to its defenses.

specific responses and objections Walgreens contends are deficient. Accordingly, the United States will address the categories of information as described by Walgreens.

## ARGUMENT

The scope of discovery in civil litigation falls within the sound discretion of the trial court. *See Robert Wigington v. Metro. Nashville Airport Auth.*, No. 3:17-CV-01523, 2019 WL 12096809 at *3 (M.D. Tenn. June 21, 2019) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)). "Unless otherwise limited by court order," Rule 26 of the Federal Rules of Civil Procedure allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 33 specifically provides that "a party may serve on any other party nor more than 25 written interrogatories, including all discrete subparts. . . . An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1) and (2). Similarly, Rule 34 provides that "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce "any designated documents or electronically stored information" that is "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)–(a)(1)(A).

As explained below, Walgreens' motion to compel should be denied in its entirety because the discovery it seeks either has been provided or will be provided, or because the discovery is outside the scope permitted by Rule 26(b)(1) in that it seeks information that is privileged or irrelevant to the issues in the case, and the discovery is unduly burdensome. Under Rule 26(b)(2)(C)(iii), a court (on motion or on its own) "must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules] or by local rule if it determines that. . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." It is well-settled that the party seeking the proposed discovery has the burden of demonstrating that it is relevant to the claims or defenses in the action. *Grant, Konvalinka &*

3

*Harrison, P.C. v. United States*, No. 1:07-CV-88, 2008 WL 4865566, * 4 (E.D. Tenn. Nov. 10, 2008).

In deciding whether information is discoverable, "the court must weigh the burden and expense of the

discovery versus its likely benefit, as required by Rule 26(b)(1)." *Gazvoda v. Sec'y of Homeland Sec.*,

Case No. 15-cv-14099, 2017 WL 168159, *4 (E.D. Mich. Jan. 17, 2017).

**A.      Walgreens' Document Requests Relating to CMS Release No. 172 and the TennCare Waiver**

Without specifically discussing any particular requests for production (RFPs) or the United

States' responses and objections thereto in any significant detail, Walgreens complains generally that

the United States has "improperly" withheld relevant documents related to CMS Release No. 172 and

TennCare's SSA Section 1115 Waiver.  *See* Walgreens' Motion to Compel, ECF 116 at 5-11.[4]  In

particular, Walgreens complains that the United States "has agreed to produce only a narrow set of

documents: 'communications with TennCare related to Release No. 172' (none of which it has

produced to date) and documents that are already publicly available." *Id.* at 6.  "Thus," Walgreens

continues, "by way of example only, the United States has refused to produce CMS internal

communications regarding Release No. 172 and the review and approval of TennCare's 'special

demonstration' status." *Id.*

---

[4] Walgreens' motion to compel generally describes only in summary fashion a number of specific RFPs that seek documents and communications related to "the promulgation and implementation" of Release No. 172, documents and communications pertaining to the criteria considered or used by *any* state Medicaid programs, "including TennCare," for coverage for Hepatitis C medications (again, *any* Hepatitis C medications), documents "relating to" TennCare's application to operate as a special demonstration project under the Secretary of Health and Human Services' waiver authority, information relating to the cost effectiveness of the four DAAs, and communications among the Plaintiffs and the State of Tennessee's pharmacy benefit managers relating to DAA requirements. ECF 116 at 6 n.3, 10-11 (discussing RFPs 58-62 and "numerous other" RFPs that "implicate" CMS Release No. 172 and the CMS waiver).

4

The United States has not yet produced any communications with TennCare related to Release No. 172 because in the course of its review and collection efforts to date, the United States has not identified such communications. Discovery remains ongoing, and the United States will identify any such communications that it may find and either produce them or assert any applicable privilege.

Walgreens already has CMS Release No. 172 and the CMS Waiver documents upon which the United States and Tennessee rely. Indeed, the United States and Tennessee filed copies of the Section 1115 Waiver granted by CMS to TennCare, extensions of the Waiver, and materials attendant to the Waiver as Exhibits A-J to their Joint Response in Opposition to Walgreens' Supplemental Brief in Support of its Motion to Dismiss. ECF 042 at 2 n.3; ECF 042-1 through 042-10. Additionally, in its response to RFP 60, the United States directed Walgreens to the Medicaid.gov TennCare waiver web page,[5] which contains an extensive (if not exhaustive) library of materials related to TennCare's Section 1115 Waiver including pending applications and related documents, approved applications and related documents, and the administrative record containing historical records related to the TennCare Section 1115 Waiver. *See* ECF 116, Ex. M at 14-15 (Plaintiffs' Resp. to RFP 60).

To the extent that Walgreens seeks the production or disclosure of additional materials such as "CMS internal communications regarding Release No. 172 and the review and approval of TennCare's 'special demonstration' status," *see* ECF 116 at 6, the United States has asserted objections that the discovery sought is overbroad, unduly burdensome, irrelevant to the claims asserted or any viable defenses that Walgreens may assert, or seeks privileged information. *See id*. Ex. M at 13-15 (Responses to RFPs 58-62). Walgreens' attempt to dismiss the United States' objections with the waive of a hand as "meritless," ECF 116 at 6, or to argue that the United States has waived all

---

[5] Available at https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver-list/83206.

objections on relevance grounds, ECF 116 at 7, should be rejected. The United States specifically asserted the objections, and any responsive information that has been produced was explicitly produced subject to and without waiving its objections. *Id.* Ex. J at 8-11 (Responses to RFPs 7, 9, 10, 11, 12 and 13), Ex. M at 13-15 (Responses to RFPs 58-62).

CMS is a massive organization, and the Medicaid program on a national level is, depending on the metrics used, either the largest or the second-largest federal health care program. Discovery requests seeking "all" documents or communications relating to the "promulgation and implementation of Release No. 172" or "CMS documents and communications pertaining to the criteria *considered or used by* [any] state Medicaid programs . . . for coverage of Hepatitis C medications . . ."[6] impose an extremely high burden. Identifying and collecting such information alone is a daunting task, let alone reviewing the material for responsiveness and privilege.

Further, the burden of the proposed discovery outweighs its likely benefit. Release No. 172 itself is the operative document that embodies what CMS said in 2015 about state Medicaid prior authorization criteria for DAAs. Similarly, the TennCare Section 1115 Waiver itself (along with its attendant materials) is the operative document that reflects TennCare's status as a special demonstration project and the operation and effect of the Waiver. Internal communications about those documents are not likely to be of significant value adjudicating the issues in dispute. This is especially so because, for the reasons discussed at length in the Plaintiffs' briefs responding to Walgreens' Supplemental Brief in Support of its Motion to Dismiss, Walgreens' defense that TennCare's prior authorization criteria were legally invalid and unenforceable fails as a matter of law. *See* ECF 42 and ECF 53.

---

[6] *See* Walgreens' Motion to Compel, ECF 116 at 6 n.3.

Despite Walgreens' repeated arguments to the contrary, Release No. 172 was *not* an affirmative determination by CMS that the prior authorization criteria used by Tennessee or any other state actually violated federal law (and even if it was such a statement, it would not be binding on either the parties or this Court). ECF 42 at 9-13. This Court should decline to follow the decision by the United States District Court for the Western District of Virginia in *United States v. Walgreen Co.*, No. 1:21-CV-00032-JPJ-PMS, 2021 WL 5760307 (W.D. Va. Dec. 3, 2021), on which Walgreens now seeks to rely in this case. Respectfully, the Western District of Virginia erred by subjecting the state's statutory authority to impose prior authorization requirements on *any* covered outpatient drug (under 42 U.S.C. § 1396r-8(d)(1)(A)) to the limitations placed on "other" permissive restrictions (such as exclusions under a formulary) set out in 42 U.S.C. § 1396r-8(d)(1)(B) and (d)(4). *See Pharmaceutical Research and Mfrs. America v. Walsh*, 538 U.S. 644 at 653 (2003) ("[A] prior authorization program that complies with the 24–hour and 72–hour conditions [set forth in section 1396r-8(d)(5)] is not subject to the limitations imposed on formularies [contained in section 1396r-8(d)(4)]"); *see also id.* at 677 ("[t]he *only* stricture placed on a prior authorization program is compliance with certain enumerated procedures, § 1396r–8(d)(5). Undoubtedly, the 'purpose' of § 1396r–8(d)(1) is its effect—to grant participating States the authority to subject drugs to prior authorization **subject only to the express limitations in § 1396r–8(d)(5)**.") (Thomas, J.) (concurring) (emphasis added).

Finally, even if this Court were inclined to find that TennCare's prior authorization criteria could be deemed to violate section 1396r-8(d)(4), as Walgreens contends, the plain language of TennCare's Section 1315 Waiver explicitly exempts TennCare from the requirements of section 1396r-8(d)(4). *See* ECF 42, U.S. and Tenn. Jt. Resp. to Supp. Brief in Support of Mot. to Dismiss, at 6-9, n.6. Although Walgreens is skeptical, the text of Section 1315 is clear. Among other things, 42 U.S.C. § 1315(a)(1) provides authority to the Secretary of Health and Human Services to "waive compliance

7

with any of the requirements" of 42 U.S.C. § 1396a "[i]n the case of any experimental, pilot, or demonstration project. . . ." In turn, 42 U.S.C. § 1396a(a)(54) requires a State which "provides medical assistance for covered outpatient drugs" to "comply with the applicable requirements of [42 U.S.C. §] 1396r-8. . . ." So, because the Secretary of HHS possesses the discretionary authority to waive "*any* of the requirements" of Section 1396a, the Secretary may waive any of the "applicable requirements" of Section 1396r-8. And, as stated in the TennCare waiver documents, that is precisely what the Secretary did. *See* ECF 42 at 6-8, Exhibits A, B and C.

The Court has not yet ruled on the issues raised by Walgreens' Supplemental Brief filed in Support of its Motion to Dismiss [ECF 41], or the briefs that followed [ECF 42, 47, 53 and 54]. Nevertheless, Walgreens' asserted defense that TennCare's prior authorization criteria were legally invalid and unenforceable fails as a matter of law. To the extent that the Court so rules, Walgreens' discovery requests seeking documents and communications related to Release No. 172 and the TennCare waiver are irrelevant to the parties' claims and defenses, and therefore outside the scope of Rule 26(b)(1). Accordingly, Walgreens' motion to compel should be denied.

**B.        Walgreens'' Request for Information Related to Email Searches and Productions**

The United States is aware of its obligation to produce relevant, responsive emails to the extent they are nonprivileged and otherwise within the scope of Rule 26(b)(1). Because the claims and defenses in this case relate exclusively to requests for prior authorization and claims for payment submitted to and paid by the TennCare program and its contractors, and the TennCare program is administered and managed on a day-to-day basis by the State of Tennessee (and its agencies and contractors), most if not all of the most relevant and responsive emails are in the possession of those entities and third parties. Moreover, in light of the United States' objections to discovery requests seeking documents and communications related to Release No. 172 and the TennCare Section 1315

8

waiver as discussed *supra* at section A, the United States has not yet identified emails in its possession

that are relevant and responsive within the scope of Rule 26(b)(1). The United States is continuing its

efforts, however, and is prepared to confer further with Walgreens regarding this issue.

**C.** **Walgreen's Discovery Requests Related to the United States Implementation of a Document Hold and Information Regarding Document Preservation**

Walgreens seeks to compel the United States' responses to 8 interrogatories and 11 requests for

production of documents that seek documents and information related to the United States'

implementation of a document hold and related to document preservation, including information on the

United States' document retention policies and practices. *See* Walgreens' Motion to Compel, ECF 116

at 12-16. The United States has objected to each of those discovery requests, whether generally or

specifically, on the basis that the requests are not relevant,[7] that they are not proportional to the needs

of the case, or that they seek privileged information. *See* ECF 116 Ex. F at 1-2 (General Objections),

14 (Resp. to Interrog. 15); Ex. G at 1-2 (General Objections), 4-8 (Resp. to Interrogs. 17-21, 23 and

25); Ex. M at 1-4 (General Objections), 7-12 (Resp. to RFPs 43-45, 47-53 and 56).

Discovery requests that seek information relating to parties' litigation hold and their document

preservation and collection efforts are commonly known as "discovery on discovery." Because

"discovery on discovery" is collateral to the substantive issues involved in the litigation, courts "must

closely scrutinize the request 'in light of the danger of extending the already costly and time-

consuming discovery process *ad infinitum*.'" *Commins v. NES Rental Holdings, Inc.*, Civil Action No.

---

[7] Walgreens appears to argue that information regarding document preservation is relevant to the United States' "Reverse" False Claims Act allegations because, according to Walgreens, reverse false claims liability based on the knowing and improper avoidance of a repayment obligation requires a showing that the government was deceived by the defendant's conduct. *See* ECF 116 at 12, n.5. Significantly, however, this Court soundly rejected that argument in its Order denying Walgreens' Motion to Dismiss. *See* Mem. Op. and Order, ECF 104 at 24-27.

9

3:16CV-00608, 2018 WL 3186983, * 9 (W.D. Ky. June 28, 2018) (citation omitted).  In light of this

risk, "[a] number of courts look upon collateral discovery 'with skepticism' or 'strongly discourage'

it."  *Id.* (collecting cases).

Walgreens' propounded Interrogatories 15, 17-23 and 25, and Requests for Production 43-45,

47-53 and 56 are objectionable absent a factual basis showing potential spoliation or raising questions

about the United States' preservation or collection efforts.  *The Sedona Conference* has stated:

> [T]here should be no discovery on discovery, absent an agreement between
> the parties, or ***specific, tangible, evidence-based indicia*** (versus ***general***
> ***allegations*** of deficiencies or ***mere "speculation"***) of a ***material failure*** by
> the responding party to meet its obligations.  A requesting party has the
> ***burden of proving a specific discovery deficiency in the responding party's***
> ***production***.  *See* Principle 7 ("The requesting party has the burden on a
> motion to compel to show that the responding party's steps to preserve and
> produce relevant electronically stored information were inadequate").

*The Sedona Principles, Third Edition:  Best Practices, Recommendations & Principles for Addressing*

*Electronic Document Production cmt. 6.b.,* 19 SEDONA CONF. J. 1, 123-124 (2018) (emphasis added).

The Sixth Circuit has cited with approval the principles articulated by *The Sedona Conference*

when it comes to discovery best practices.  *John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008).

The case law within this Circuit also recognizes that a factual basis for questioning a party's

preservation and collection efforts must exist before discovery on discovery is permitted.  *See Shufeldt*

*v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, Case No. 3:17-cv-01078, 2020 WL

1532323, * 9-12 (M.D. Tenn. March 31, 2020); *Commins*, 2018 WL 3186983 at * 9; *EPAC Tech., Inc.,*

*v. Thomas Nelson, Inc.*, No. 3:12-cv-00463, 2015 WL 13729725, * 6-7 (M.D. Tenn. Dec. 1, 2015) (all

stating that discovery on discovery is proper only when there is a showing of potential spoliation or

issues with a party's preservation and collection efforts); *cf. Beaudry v. TeleCheck Serv., Inc.*, No. 3-

07-0842, 2013 WL 12355782, *1-2 (M.D. Tenn. March 31, 2013) (allowing discovery into the

10

defendant's retention policies and litigation holds because the plaintiff had evidence of spoliation and a flawed document production).

Accordingly, to seek discovery into the United States' document preservation and collection efforts, Walgreens has the burden of proving a *specific* deficiency in the government's production, and that such deficiency is "material." *The Sedona Principles*, *supra*, at 123. Mere speculation about the quality of the government's preservation or collection efforts, or unsubstantiated assertions about purportedly missing data and the government's alleged delay in responding to Walgreens' written discovery requests, are insufficient to open the door into the intrusive discovery sought by Walgreens. *Id*. Equally unavailing is any contention by Walgreens that the United States' production of documents consists of fewer documents than Defendants expected. *See Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. . . Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed."). To the extent Walgreens seeks information about the United States' document retention policies or those of its agencies, such discovery is improper absent a showing of potential spoliation. *Shufeldt*, 2020 WL 1532323, at * 12.

Moreover, to the extent Defendant's proposed discovery seeks information relating to the United States' "Document Hold" (including Interrogatories 15, 17-21, 23 and 25), such discovery is improper because litigation hold letters are generally protected by the attorney-client and/or work product privileges. *EPAC Tech., Inc.,* 2015 WL 13729725 at * 6.

Significantly, in the parties' Rule 26(f) conference, Walgreens did not raise any specific issues or identify particular types of discovery that it planned to seek relating to the government's

11

preservation and collection efforts. Similarly, it has not identified any specific facts or events that it contends suggest spoliation. Rather, Walgreens has only identified general concerns based on counsel's previous experience as an Assistant United States Attorney in another district, its contention that TennCare should have implemented a litigation hold earlier than it did, and the imposition of sanctions against the United States in a 2012 case from the District of New Mexico where the court determined that the United States failed to issue a timely and adequate litigation hold and——importantly——it was determined that spoliation in fact occurred. *See United States ex rel. Baker v. Cmty. Health Sys., Inc.*, 2012 WL 12294413 (D.N.M. Aug. 31, 2012). These generalized concerns do not rise to the level of demonstrating a likelihood of spoliation in this case.

Walgreens's motion to compel should be denied because its discovery requests are unduly burdensome and seek irrelevant and privileged information.

**D.     Identities of Individuals with Relevant Information**

Interrogatory No. 3. The United States' objection was proper under *Bose v. Rhodes College*, 2017 WL 4479258 at *9 (W.D. Tenn. Oct. 6, 2017). Walgreens did not serve a different or modified interrogatory, and Walgreens' offer to narrow the request does not render the interrogatory non-objectionable under *Bose*.

Interrogatories No. 4 and 5. The United States' responses to these interrogatories, read fairly and in their entirety, disclose the circumstances under which personnel affiliated with HHS and DOJ reviewed the relevant prior authorization documents and/or claims for payment, and identify the personnel involved by affiliation, if not by name. To clarify, the United States did not identify any persons affiliated with HHS or DOJ who conducted reviews of the relevant prior authorization documents and/or claims for payment "in the ordinary course of government business" after the time of the documents' submission because no such reviews were conducted by HHS or DOJ personnel.

12

Interrogatory No. 8:  Walgreens' Interrogatory remains extremely broad (and objectionable) to the extent that it seeks the identification of "all" persons with knowledge of federal financial participation in TennCare between January 1, 2010 and the present.  Nevertheless, the United States can provide a supplemental response, within the next week.

## E.      The "Reilly Case File"

Despite Walgreens' assertions to the contrary, the United States has produced documents obtained in the course of its investigation.  For example, the United States has produced records that it obtained from TennCare, Magellan, prescribing providers and other healthcare facilities that provided services for the 51 TennCare enrollees whose prior authorization requests and paid claims formed the basis for Reilly's criminal plea.

Walgreens complains that the United States has not produced the presentence report and psychological evaluation that were provided to the criminal prosecutor in the *Reilly* case.  Because the presentence report and psychological report prepared in connection with the *Reilly* sentencing are documents that were prepared or obtained by the United States Probation Office at the direction of the Court and belongs to the Court, it is unclear whether the United States Attorney's Office may produce those materials to Walgreens without the Court's approval.

With regard to other materials in the investigative "case file," the United States anticipates being able to provide a privilege log within the next two weeks.  Materials in the investigative files include, among other things, internal investigative reports summarizing witness interviews (including interviews conducted by or at the direction of government attorneys), relaying preliminary investigative findings and impressions, and similar information.  Although the Tennessee Bureau of Investigation Medicaid Fraud Control Division (TBI-MFCD) investigated Reilly, TBI-MFCD also assists with civil investigations and has kept its investigation open during the investigation and

13

prosecution of this civil action. Accordingly, it is appropriate to preserve the government's right to assert all available privileges.

**F.        "Claims Audits" and "Conduct of Investigations" re: Medicaid Overpayments**

Walgreens complains that the United States has not produced any documents in response to RFP 16. As clarified in the United States' General Objections to Walgreens' First Requests for Production of Documents (ECF 116 Ex. J at 3), a response to a specific request stating that any responsive documents will be produced is not intended as a representation that the United States in fact has possession, custody or control of responsive, non-privileged documents, but rather that it will undertake a reasonable search for responsive documents and will produce any responsive, non-privileged documents identified by that search. After diligent inquiry the United States has determined that it does not have any responsive information related to the Kingsport Pharmacy for the timer period January 1, 2010, to the present.

Regarding RFP 17, the United States stands on its objections.

**G.        Walgreens' Arguments Regarding the Scope of Responsiveness Related to "Other" Hepatitis C Drugs**

Although Walgreens correctly states that the parties are conferring about limiting the scope of various discovery requests that "implicate drugs" other than the Four DAAs, its discovery requests seeking information about "other" Hepatitis C drugs is tied to its defense that TennCare's prior authorization criteria violated federal law (consistent with Walgreens' incorrect interpretation of Release No. 172). Accordingly, Walgreens' motion to compel discovery on these topics should be denied for the same reasons discussed *supra* at pp. 5-8.

14

## CONCLUSION

For these reasons, the United States respectfully requests that this Court deny Defendant

Walgreens' motion to compel in its entirety.


.Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

By: */s/ Robert C. McConkey, III*
    Robert C. McConkey, III, BPR #018118
    Joseph C. Rodriguez, Ohio Bar No. 0072958
    Assistant United States Attorneys
    800 Market St., Suite 211
    Knoxville, TN 37902
    (865) 545-4167
    robert.mcconkey@usdoj.gov
    joe.rodriguez@usdoj.gov

    *Counsel for the United States of America*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.


    */s/ Robert C. McConkey, III*
    Robert C. McConkey, III
    Assistant United States Attorney