IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE,<br><br>    *Plaintiffs*,<br><br>v.<br><br>WALGREEN CO.,<br><br>    *Defendant*. | Case No. 2:21-CV-00080-JRG-CRW |

**UNITED STATES' MOTION TO LIMIT DISCOVERY AND/OR FOR PROTECTIVE ORDER**

  Pursuant to Rule 26(b)(2)(C)(iii) of the Federal Rules of Civil Procedure, Plaintiff the United States of America ("United States"), by and through Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, respectfully requests that the Court enter an Order limiting the extent of discovery proposed by Defendant Walgreen Co. ("Defendant") in a Rule 30(b)(6) notice of deposition because it is outside the scope permitted by Rule 26(b)(1), and Defendant did not confer in good faith about the matters for examination. Alternatively, the United States moves for a protective order under Rule 26(c) forbidding the proposed discovery.

**I. Background**

  On May 10, 2021, the United States and the State of Tennessee filed this action against Defendant under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the Tennessee Medicaid False Claims Act, Tenn. Code. Ann. §§ 71-5-181 *et seq.*, and common law theories of payment by mistake and unjust enrichment. The United States and Tennessee allege that Defendant submitted, or caused the submission, of false or fraudulent claims for payment to the Tennessee Medicaid program known as TennCare. (Doc. 1.) The United States and Tennessee further allege that Defendant knowingly and improperly retained TennCare benefits that Defendant received due to the false and fraudulent claims submitted. *Id.* The deadline for

1

completing fact discovery is June 27, 2022. (Doc. 97.)[1] The objectionable discovery primarily consists of topics proposed by Defendant in a Rule 30(b)(6) notice of deposition relating CMS's litigation hold and document preservation/collection efforts. As explained below, these topics are objectionable because: they seek information that is privileged and irrelevant; Defendant did not confer with the United States in good faith about the matters for examination as required by Rule 30(b)(6); and the proposed discovery is unduly burdensome.

### A. Defendant's Rule 30(b)(6) Notice

On January 21, 2022, Defendant served the United States with a Rule 30(b)(6) notice of deposition requesting to depose one or more persons who could testify on behalf of the Centers for Medicare and Medicaid Services ("CMS") on 27 topics identified in the notice. (Exhibit 1.) The following topics are relevant to this motion:

2. CMS's policies, procedures, and practices for determining whether and when to implement Document Holds, and for implementing and enforcing them, including but not limited to: the persons involved in determining whether, when, and/or how to implement a Document Hold; the criteria and facts considered as part of those decisions; the mechanics of implementing Document Holds and preserving information pursuant to them; and the methods and practices used for verifying compliance with Document Holds.

3. CMS's policies, procedures, and practices for maintaining and retaining information in the ordinary course of business, including but not limited to: Retention Policies; processes and procedures for creating and maintaining data backups; and any other policy, procedure, or practice by which information is maintained or retained.

4. Any training CMS provided to its employees, contractors, or other agents or representatives that is related to information preservation.

7. All communications between or among CMS, on the one hand, and any other person, on the other hand, about whether, when, and to what extent a Document Hold should be implemented in connection with this Action and/or the investigation that preceded it.

8. All Document Holds that CMS has implemented in connection with this Action and the investigation that preceded it, including but not limited to, for each Document Hold: the development of the Document Hold; the subject matters, custodians, document and data

---

[1] On May 24, 2022, Walgreens filed an Unopposed Motion for Limited Extension of Fact Discovery (Doc. 119) seeking to extend the deadline for fact discovery to August 19, 2022. That motion is currently pending before the Court.

repositories; and time periods covered by the Document Hold; the communication of the Document Hold to individual custodians or others with responsibility for information preservation; when and how the Document Hold was implemented; how, if at all, compliance with the Document Hold has been or is being tracked and enforced; and all communications with any person related to the Document Hold.

9. All other Document Holds implemented by CMS in the period from October 1, 2014 to the present that you believe resulted in the preservation of information relevant to this Action, including but not limited to, for each Document Hold: the development of the Document Hold, and the matter(s) in relation to which it was developed; the subject matters, custodians, document and data repositories, and time periods covered by the Document Hold; the communication of the Document Hold to individual custodians or others with responsibility for information preservation; when and how the Document Hold was implemented; and how, if at all, compliance with the Document Hold has been or is being tracked and enforced.

10. All Retention Policies in effect from October 1, 2014 to the present and applicable to persons employed by, contracted with, or affiliated with CMS, including but not limited to, for each Retention Policy: the creation of the Retention Policy; the subject matters, custodians, document and data repositories, and time periods covered by the Retention Policy; the communication of the Retention Policy to individual custodians or others with responsibility for information preservation; how the Retention Policy was implemented; and how, if at all, compliance with the Retention Policy has been or is being tracked and enforced.

11. Any analysis, assessment, study, review, or other consideration, undertaken by or for CMS or the United States, of whether, for any custodian who would potentially possess information relevant to this Action or to the investigation that preceded it, such information was actually preserved by operation of any Retention Policy or Document Hold.

12. The identity, custodian(s), scope, and volume of any data, documents, or other information that is relevant to this Action or to the investigation that preceded it and that was lost or destroyed before the implementation of any Document Hold or has been destroyed since the implementation of any Document Hold, regardless of whether the Document Hold was tied directly to this Action or not, and the circumstances of such loss or destruction.

27. The Hepatitis C Medicaid Affinity Group, including but not limited to the following: the group's formation, purpose, and activities; criteria for joining and/or participating in the group; the State of Tennessee's participation in the group; Tennessee's status as a "Previous Year Participant" in the group; and any activities, documents, and/or communications by or involving the group and related to Tennessee.

### B. The United States' Good Faith Efforts to Confer with Defendant

On February 1, 2022, the United States conferred via telephone with Defendant regarding topics 2, 3, 4, 7-12. (Exhibit 2.) During the call, the United States objected to these topics on the ground that they seek irrelevant information about the government's litigation hold and document preservation/collection efforts, which the United States asserted is improper absent a showing of spoliation or evidence that the United States somehow failed to meet its discovery obligations. When counsel for Defendant was asked during the call whether Defendant contends that "relevant information was at one point in existence but no longer exists because it was allegedly lost or destroyed by the United States due to inadequate preservation or collection efforts," Defendant did not identify any information it believes was lost or destroyed. (*Id*. at 3.)

On February 7, 2022, the United States followed up on the February 1 discussion by sending Defendant a detailed letter explaining the nature and basis for the government's objections. (*Id*. at 1-3.) Citing authorities from this Circuit, the United States explained that Defendant's proposed discovery into the government's litigation hold and document preservation/collection efforts is "objectionable absent a factual basis showing potential spoliation and/or raising questions about a party's preservation or collection efforts." (*Id*. at 2.) The letter also stated as follows:

> If Walgreens believes that relevant information was allegedly lost or destroyed by the United States due to inadequate preservation or collection efforts, please describe such information and the basis for Walgreens' belief that such information was lost or destroyed by the United States due to inadequate preservation or collection efforts.
>
> If you disagree with the United States' objections to these topics, please explain the bases for your disagreement and provide citations to relevant legal authorities that you believe justify discovery into the government's document preservation and collection efforts so that we can evaluate how to best proceed with the Rule 30(b)(6) deposition.

(*Id*. at 3.) Although the government's objections to topic 27 were not raised in the February 1 call with Defendant, the United States objected to this topic in its February 7 letter on the ground that it seeks

irrelevant information and information that is not proportional to the needs of this case. (*Id*. at 1, 3.) The United States also referred Defendant to the objections it raised to Request for Production Nos. 37-40 in the United States' Responses to Defendant's Second Requests for Production of Documents which sought information relating to "The Hepatitis C Medicaid Affinity Group." (*Id*.)

As for the remaining topics, the United States agreed to produce one or more witnesses who could testify about topics 1, 5, 6, and 13-26 subject to the parties reaching an agreement on the government's objections to these topics (which mainly related to the topics' overly broad scope and potential privilege issues) and requests for clarifications as set forth in the February 7 letter. (*Id*. at 1.) In a show of good faith and to demonstrate that it was ready to proceed with the deposition, the United States also proposed several dates when CMS witnesses would be available to testify regarding these topics. (*Id*. at 9.)

### C. Defendant's Failure to Confer in Good Faith with the United States

For nearly three months, the United States did not hear from Defendant in response to the objections set forth in the government's February 7 letter. On May 6, 2022, the United States finally heard from Defendant on these issues in a letter that stated as follows:

> **Topics 2, 3, 4, 7, 8, 9, 10, 11, 12, and 27**
>
> The parties have exchanged their positions on these topics and appear to be at an impasse. We intend to move to compel the United States to provide testimony on these topics.

(Exhibit 3.) At no point during the three-month period between the United States' February 7 letter and Defendant's May 6 letter did Defendant express an intention to proceed with a deposition on the topics for which the United States stated it intended to produce a CMS witness (*i.e.*, topics 1, 5, 6, and 13-26). On May 13, 2022, the United States conferred with Defendant via telephone about Defendant's Rule 30(b)(6) notice. Although the United States' objections to topics 2, 3, 4, 7-12, and 27 were briefly addressed during the May 13 call, Defendant made clear that it intended to file a motion to compel on

these topics. As a result, the parties' discussion on May 13 primarily focused on the proposed dates and logistics for the deposition of government witnesses on topics 1, 5, 6, and 13-26.

II. Law and Argument

    A. The Proposed Discovery Should be Denied Because Defendant Did Not Confer in Good Faith with the United States as Required by Rule 30(b)(6)

Rule 30(b)(6) states that, "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization ***must confer in good faith*** about the matters for examination." (Emphasis added). This requirement was added to Rule 30(b)(6) to address concerns about "overlong or ambiguously worded lists of matters for examination and inadequately prepared witnesses." FED. R. CIV. P. 30(b)(6) advisory committee's note to 2020 amendment. Thus, to avoid needless litigation about avoidable issues, Rule 30(b)(6) requires "[c]andid exchanges about the purposes of the deposition and the organization's information structure [which] may clarify and focus the matters for examination, and enable the organization to designate and to prepare an appropriate witness or witnesses, thereby avoiding later disagreements." *Id*. The good faith conference requirement is intended to "facilitate[ ] collaborative efforts to achieve the proportionality goals" of Rule 1 and Rule 26(b)(1). *Id*.

As noted above, the United States conferred with Defendant via telephone on February 1, 2022, regarding its objections to topics 2, 3, 4, 7-12 and followed up on that discussion by sending Defendant a detailed letter on February 7 setting forth the reasons for, and the legal authorities supporting, its objections. (Exhibit 2.) Significantly, the February 7 letter invited Defendant to "explain the bases for [its] disagreement" with the government's objections and asked that it "provide citations to relevant legal authorities" supporting its belief that the requested discovery is permissible so that the United States could "evaluate how to best proceed with the Rule 30(b)(6) deposition." (*Id*. at 3.) Instead of conferring with the United States, nearly three months passed before Defendant sent the government a letter stating that the parties had reached an "impasse" and that it would file a motion compelling the United States to produce a witness who could testify on these topics. (Exhibit 3.)

Courts have authority to enforce Rule 30(b)(6)'s good faith requirement. *See* FED. R. CIV. P. 1 (stating that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); FED. R. CIV. P. 26(b)(2)(A) (allowing a court to limit the number and/or length of depositions allowed under the Rules); *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 5892914, * 2 (W.D. Mich. Nov. 30, 2009) (stating a court has "the inherent authority to prevent parties from engaging in abusive or inappropriate discovery practices"). A failure by the noticing party to confer in good faith about the matters for examination is grounds for limiting or denying the deposition. *See Senegal v. Anderson*, Civil Action No. 20-544-JWD-RLB, 2021 WL 4444722, * 3 (M.D. La. Sept. 28, 2021) (refusing to compel a Rule 30(b)(6) deposition, in part, because the plaintiff did not confer with the defendant about the matters for examination before filing the motion); *Cf. Nevilles v. Waffle House, Inc.*, Civil Action File No. 1:19-cv-5782-MHC-JKL, 2021 WL 3417942, * 2 (N.D. Ga. Mar. 8, 2021) (denying a motion to stay discovery to enable the plaintiff to seek further testimony under Rule 30(b)(6) due to an inadequately prepared witness because she "unreasonably failed in her obligation to confer about the proposed deposition topics").

Defendant's proposed discovery into topics 2, 3, 4, 7-12, and 27 should be denied because it failed to confer in good faith with the United States about why it believes this discovery is permitted.

### B. The Proposed Discovery is Outside the Scope of Rule 26(b)(1)

In addition to its failure to confer in good faith about the topics for examination, Defendant's proposed discovery is unduly burdensome and seeks information about collateral matters that are irrelevant to the issues in this case. Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." This language was added to Rule 26(b)(1) to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment.

Courts in this Circuit have quashed or limited Rule 30(b)(6) depositions by reference to Rule 26(b)(1) and Rule 26(b)(2)(C), without requiring that the deponent show good cause for a protective order under Rule 26(c). *Loomis v. Unum Group Corp.*, 338 F.R.D. 225, 230-32 (E.D. Tenn. 2021); *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 122 (E.D. Mich. 2019); *Smith v. Old Dominion Freight Line, Inc.*, Civil Action No. 3:15-CV-560-CRS, 2017 WL 2371825, * 5, 8 (W.D. Ky. May 31, 2017). Under Rule 26(b)(2)(C)(iii), a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules] or by local rule if it determines that... the proposed discovery is outside the scope permitted by Rule 26(b)(1)." It is well-settled that the party seeking the proposed discovery has the burden of demonstrating that it is relevant to the claims or defenses in the action. *Grant, Konvalinka & Harrison, P.C. v. United States*, No. 1:07-CV-88, 2008 WL 4865566, * 4 (E.D. Tenn. Nov. 10, 2008). In deciding whether information is discoverable, "the court must weigh the burden and expense of the discovery versus its likely benefit, as required by Rule 26(b)(1)." *Gazvoda v. Sec'y of Homeland Sec.*, Case No. 15-cv-14099, 2017 WL 168159, *4 (E.D. Mich. Jan. 17, 2017).

### (1).   Topics 2, 3, 4, 7-12

Each of these topics seek information relating to the government's litigation hold and/or document preservation and collection efforts. Such discovery is commonly known as "discovery on discovery." Because "discovery on discovery" is collateral to the substantive issues involved in the litigation, courts "must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*.'" *Commins v. NES Rental Holdings, Inc.*, Civil Action No. 3:16CV-00608-GNS, 2018 WL 3186983, * 9 (W.D. Ky. June 28, 2018) (citation

omitted). In light of this risk, "[a] number of courts look upon collateral discovery 'with skepticism' or 'strongly discourage' it." *Id.* (collecting cases).

Discovery into topics 2, 3, 4, and 7-12 is objectionable absent a factual basis showing potential spoliation and/or raising questions about a party's preservation or collection efforts. *The Sedona Conference* has stated:

> [T]here should be no discovery on discovery, absent an agreement between the parties, or ***specific, tangible, evidence-based indicia*** (versus ***general allegations*** of deficiencies or ***mere "speculation"***) of a ***material failure*** by the responding party to meet its obligations. A requesting party has the ***burden of proving a specific discovery deficiency in the responding party's production***. *See* Principle 7 ("The requesting party has the burden on a motion to compel to show that the responding party's steps to preserve and produce relevant electronically stored information were inadequate").

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production cmt. 6.b.,* 19 SEDONA CONF. J. 1, 123-124 (2018) (emphasis added).

The Sixth Circuit has cited with approval the principles articulated by *The Sedona Conference* when it comes to discovery best practices. *John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008). The case law within this Circuit also recognizes that a factual basis for questioning a party's preservation/collection efforts must exist before discovery on discovery is permitted. *See Edwards*, 331 F.R.D. at 125; *Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, Case No. 3:17-cv-01078, 2020 WL 1532323, * 9-12 (M.D. Tenn. March 31, 2020); *Commins*, 2018 WL 3186983 at * 9; *EPAC Tech., Inc., v. Thomas Nelson, Inc.*, No. 3:12-cv-00463, 2015 WL 13729725, * 6-7 (M.D. Tenn. Dec. 1, 2015) (all stating that discovery on discovery is proper only when there is a showing of potential spoliation or issues with a party's preservation/collection efforts); *cf. Beaudry v. TeleCheck Serv., Inc.*, No. 3-07-0842, 2013 WL 12355782, *1-2 (M.D. Tenn. March 31, 2013) (allowing discovery into the defendant's retention policies and litigation holds because the plaintiff had evidence of spoliation and a flawed document production).

Thus, to seek discovery into the United States' document preservation and collection efforts, Defendant has the burden of proving a specific deficiency in the government's production, and that such deficiency is "material." *The Sedona Principles*, *supra*, at 123. Mere speculation about the quality of the government's preservation or collection efforts, as well as unsubstantiated assertions about purportedly missing data and the government's alleged delay in responding to Defendant's written discovery requests, are insufficient to open the door into the intrusive discovery sought by Defendant. *Id*. Equally unavailing is any contention by Defendant that the United States' production of documents consists of fewer documents than Defendant expected. *See Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. . . Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed."). To the extent Defendant seeks information about CMS' document retention policies, such discovery is improper absent a showing of potential spoliation. *Shufeldt*, 2020 WL 1532323, at * 12.

In addition to seeking irrelevant information, the proposed discovery is not important to resolving the issues in this case. The three-month delay between the United States' objections on February 1 and 7, 2022 and Defendant's May 6, 2022 letter which expressed for the first time Defendant's continued desire to pursue the disputed discovery undermines any argument that the proposed discovery is important to resolving the issues in this case. (Exhibits 2, 3.)

It is also unclear to what extent Defendant intends to question CMS witnesses in relation to topics 2, 3, 4, 7-12, and 27, and/or whether such questions may implicate applicable privileges including the attorney-client privilege, work product doctrine, and/or the deliberative process privilege. To the extent these topics seek information covered by these or other applicable privileges, any such questions are

outside the scope of Rule 26(b)(1). *See* FED. R. CIV. P. 26(b)(1) (allowing discovery on "any nonprivileged matter. . . ."). Moreover, to the extent Defendant's proposed discovery seeks information relating to CMS's "Document Hold" (including topics 7, 8, and 9), such discovery is improper because litigation hold letters are generally protected by the attorney-client and/or work product privileges.[2] *EPAC Tech., Inc.,* 2015 WL 13729725 at * 6.

Furthermore, the burden and expense of the proposed discovery outweighs its likely benefit. Presenting a well-prepared witness who can testify about topics 2, 3, 4, 7-12 would require that CMS designate at least one witness who can meet with counsel for the United States. The United States estimates that the witness and counsel for the United States would need approximately 7 hours to meet and prepare for the extensive topics noticed by Defendant. Because Defendant has requested that the deposition be conducted in person, one of the undersigned counsel for the United States will have to fly roundtrip to Baltimore, Maryland which is where the proposed CMS witness is located. Defendant stated in its deposition notice that it "expects to cover at least Topics 1 through 14. . . on the noticed date." (Exhibit 1.) Thus, given the extensive topics that Defendant has expressed an interest in exploring at the deposition, it is reasonable to assume that the witness may be examined for up to 7 hours.

Accordingly, Defendant's proposed discovery should be denied because it is unduly burdensome and seeks irrelevant and/or privileged information. *See Edwards*, 331 F.R.D. at 125 (denying a Rule 30(b)(6) deposition into "discovery-about-discovery and preservation topics" because such information was "irrelevant and not important to resolve the case, and the burden of requiring defendant to prepare a witness to testify about these matters outweigh[ed] the likely benefit").

---

[2] Topic 9 is also objectionable on relevance grounds to the extent it seeks information about "Document Holds" issued by CMS in other cases.

**(2). Topic 27**

Regarding the United States' relevance objection to topic 27, in its February 7 letter the government referred Defendant to the description of the Hepatitis C Medicaid Affinity Group provided by the United States in its response to Defendant's Request for Production No. 40. (Exhibit 2 at 3.) The United States responded to Request for Production No. 40 (RFP 40) as follows:

> 40. All documents relating to any efforts undertaken by the Hepatitis C Medicaid Affinity Group to increase access by TennCare beneficiaries to the Four DAAs or to Other DAAs.
>
> **Response**: OBJECTION. The Request as phrased seeks the production of documents which are wholly irrelevant to the issues of this case. Without waiving this Objection, the State of Tennessee has no such documents. *The United States directs Defendant to the documents and information available at the Affinity Group webpage, and specifically to the stated purpose of "bringing states together to support developing and implementing innovative strategies for scaling up HCV screening, treatment, and cure" through [sic] by providing opportunities for participating states "to share effective strategies and collaborate to identify solutions to common challenges." As such, the Hepatitis C Medicaid Affinity Group did not, as an entity, undertake specific efforts to increase access for Medicaid beneficiaries in specific states, but rather served as a resource to states to develop and implement their own initiatives.* Accordingly, the United States does not believe that it possesses any responsive documents beyond what is available on the Affinity Group webpage. To the extent that any other responsive documents are identified in the course of discovery, this Response will be supplemented.[3]

(Exhibit 4) (emphasis added). As the United States' response to RFP 40 shows, topic 27 seeks information that is irrelevant to this case. As explained in the various documents and materials available on the Affinity Group webpage (which are referenced and linked in the United States' written responses), the Hepatitis C Medicaid Affinity Group was convened in December 2017—*after* the relevant time period during which the conduct described in Plaintiffs' Complaint occurred—by the U.S. Department

---

[3] Web addresses for the Hepatitis C Medicaid Affinity Group were provided in response to Defendant's Request for Production Nos. 37 and 38. (Exhibit 4.)

of Health and Human Services (HHS) Office of the Assistant Secretary for Health (OASH) through the Office of Infection Disease and HIV/AIDS Policy (OIDP). *See Hepatitis C Medicaid Affinity Group: Evaluation Summary 2018-2019* at 1.[4] All states were invited to participate. *Id*. The purpose of the Affinity Group was to "foster[] collaboration within and across states to increase the number and percentage of Medicaid beneficiaries diagnosed with and successfully treated for [Hepatitis C]." *Id*. The Affinity Group sought to achieve this objective by bringing together interested state agencies (including state Medicaid agencies, public health departments, and correctional agencies) with federal partners from across HHS with the objective to share promising practices, develop and implement "innovative [Hepatitis C]-related policies and programs," and increase the number and percentage of Medicaid beneficiaries diagnosed and successfully treated or cured for Hepatitis C. *See id; see also* Hepatitis C Medicaid Affinity Group homepage and "Purpose" section (available at https://www.hhs.gov/hepatitis/hepatitis-c-medicaid-affinity-group/index.html). Counsel for the United States is informed by OIDP that the Affinity Group project ended in 2020-2021 when project funding expired. Moreover, the HHS policy advisor who coordinated the Affinity Group and would have been most knowledgeable about its organization and functions is no longer employed by the federal government.

Given the policy-oriented nature of the Affinity Group, it is unlikely that the discovery sought by Walgreens would have significant relevance to Plaintiffs' claims that Walgreens knowingly submitted claims for payment for Hepatitis C medications dispensed to TennCare enrollees who did not meet TennCare's prior authorization criteria, or to Walgreens' asserted defense that TennCare's prior authorization criteria violated federal Medicaid law.[5] Further, the significant amount of material and

---

[4] Available at https://www.hhs.gov/sites/default/files/HCV-Affinity-Group-Eval-Summary-Years-1-2.pdf. This document was referenced, and the link provided in the United States' Response to RFP 40.

[5] Moreover, for the reasons discussed in its Response in Opposition to Walgreens' Motion to Compel, Walgreens' defense fails as a matter of law. *See* Doc. 118 at 7-8.

information available at the Affinity Group webpage addresses most, if not all, of the information sought by Walgreens as described in topic 27.

Defendant's May 6 letter does not explain why it believes this topic is relevant to the issues in this case, why the proposed discovery is important to resolving this case, or why the group's publicly available information is insufficient. *See Grant, Konvalinka & Harrison, P.C.*, 2008 WL 4865566 at * 4 (stating that the party who seeks discovery bears the burden of demonstrating its relevance). Preparing a witness who can testify on this topic will require that CMS designate a separate witness, and the witness and counsel for the United States will need to spend a significant amount of time and effort to prepare for the deposition. Counsel for the United States will also be required to travel to the Washington, DC area for the deposition. Although the United States has incurred (and expects that it will continue to incur) substantial expenses in prosecuting this action, the burden and expense in preparing a witness to testify about topic 27 outweighs any marginal benefit that the proposed discovery may produce. Accordingly, Defendant's proposed discovery into topic 27 should be denied.

C. **The United States is Entitled to a Protective Order Because the Proposed Discovery Imposes an Undue Burden and Expense**

For good cause shown, a court may issue a protective order under Rule 26(c)(1)(D) forbidding inquiry into certain matters to protect a party from undue burden or expense. Although the United States recognizes that the allegations against Defendant are serious, that the amount in controversy is significant, and that the government supposedly has "unlimited resources," the fact remains that the Defendant's proposed discovery seeks information about collateral issues and is improper absent some evidence of spoliation. This Circuit has stated that seeking discovery of irrelevant information may alone satisfy Rule 26(c)'s good cause requirement for purposes of issuing a protective order. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (*citing Smith v. Dowson*, 158 F.R.D. 138, 140-42 (D. Minn. 1994). Accordingly, the United States requests that the Court issue a protective order forbidding

Defendant from inquiring into topics 2, 3, 4, 7-12, and 27 because such discovery seeks irrelevant information, and the burden and expense of such discovery outweighs its likely benefit.

III.     Conclusion

For the foregoing reasons, the United States respectfully requests that the Court grant this motion and that it enter an Order denying Defendant's proposed discovery into topics 2, 3, 4, 7-12, and 27.

**Certification of the United States' Good Faith Efforts to Confer with Defendant**

As noted in this motion, counsel for the United States conferred in good faith with counsel for Defendant in an attempt to resolve this discovery dispute without the Court's intervention. Unfortunately, those efforts were unsuccessful.

Respectfully submitted,

**FRANCIS M. HAMILTON III**
**United States Attorney**

By: */s/ Robert C. McConkey III*
Joseph C. Rodriguez, Ohio Bar No. 0072958
Robert C. McConkey, III, BPR #018118
Assistant United States Attorneys
800 Market St., Suite 211
Knoxville, TN 37902
(865) 545-4167
robert.mcconkey@usdoj.gov
joe.rodriguez@usdoj.gov

*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Robert C. McConkey, III*
Robert C. McConkey, III
Assistant United States Attorney