IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE,<br><br>          Plaintiffs,<br><br>   v.<br><br>WALGREEN CO.,<br><br>          Defendant. | Case No. 2:21-CV-00080-JRG-CRW<br><br>**ORAL HEARING REQUESTED** |

**WALGREEN CO.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL THE UNITED STATES' COMPLIANCE WITH ITS DISCOVERY OBLIGATIONS**

The United States' conduct in this case is inexcusable. Having publicly accused Walgreen Co. ("Walgreens") of fraud, the United States now steadfastly refuses to produce discovery that Walgreens needs to defend itself against that accusation. In its Opposition (the "Opposition") to Walgreens' Motion to Compel (the "Motion"), the United States advances a toxic triad of concessions, misplaced assurances, and unfounded objections that together embody this absurd stance. The United States repeatedly acknowledges the relevance of the discovery Walgreens seeks related to CMS Release No. 172 (the "Release") by stating that it is searching for responsive documents. Yet, many months after its production deadline passed, the United States still fails even to say where it has searched, what remains to be searched, or how long that process is expected to take. Paradoxically, after pleading that its searches remain ongoing, the United States next argues that it should not have to search for anything at all. This shell game thinly veils the United States' apparent realization that it has breached its obligations, but there is no excuse for these tactics.

The rest of the Opposition marks an equally appalling attempt by the United States to shirk its obligations. The United States appears to concede that it likely possesses responsive communications and that email searches are underway, but makes it impossible for Walgreens or the Court to evaluate that because it still refuses to share any information about those searches' parameters, progress, or expected completion date. Confronted with Walgreens' preservation-related discovery requests, the United States mischaracterizes and misapplies case law to erect a nonsensical "requirement" that Walgreens prove spoliation in order to take discovery into potential spoliation. The United States then claims that it needs Court approval to release critical portions of the case file from its prosecution of Amber Reilly—approval it has never before claimed it needed, and which it clearly has done nothing to seek. Finally, the United States fails to explain or excuse its failure to produce eminently discoverable information that Walgreens requested long ago, on issues such as the identities of individuals with responsibility for the information in the United States' interrogatory responses.

In sum, the United States has provided no justification for its months-long avoidance of the discovery obligations it knows it bears and its squandering of the time the Court has allowed the parties to conduct discovery. The Court should grant the Motion.

**I.      The United States Concedes the Relevance of the Release and the Alleged TennCare "Waiver"**

The United States concedes that the Release is relevant to this matter by representing that it has been searching for communications between CMS and TennCare related to the Release. *See* ECF 118 at 5. Despite this, the United States continues to object to the production of *internal CMS communications* related to the Release on *relevance* grounds. *See* ECF 118 at 5-6. The United States has not remotely cleared the very high bar for resisting discovery of information on the basis that the information is not relevant.

2

Case 2:21-cv-00080-JRG-CRW   Document 123   Filed 05/27/22   Page 2 of 12   PageID #: 2413

"[A] request for discovery should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). "[T]he party who is resisting production [of relevant material] has the burden to establish that the material . . . is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Odello Indus., LLC v. Sherwin-Williams Co.*, 2015 WL 13413519, at *2 (E.D. Tenn. May 22, 2015) (citation and internal quotation marks omitted). Here, the communications Walgreens seeks are plainly relevant to its defenses; and the United States' weak excuses for resisting production—made all the weaker by acknowledging that it is actually (somehow, still) searching for responsive materials—do not remotely meet its burden.

Materials related to the Release and the purported "waiver" of its provisions are broadly relevant because the United States is one of two sovereigns with a financial stake in the Tennessee Medicaid ("TennCare") program at the core of this action. The United States' partial reimbursement of TennCare prescriptions is conditioned on TennCare's compliance with federal requirements, which requirements are overseen by CMS. On its face, the Release evidences that CMS believed the exact coverage restrictions at issue here violated federal requirements which, in turn, would negate materiality under the False Claims Act. In *this* action, the United States has attempted to dispute that reading, and so Walgreens has a right to know what CMS personnel said to each other about the Release *at the time*, including about its contents, its purpose, and its applicability.

The fact that the United States has invoked an alleged CMS "waiver" of TennCare's compliance with federal Medicaid requirements only underscores the relevance and discoverability of the CMS communications and other materials the United States has refused to

3

produce for many months. Gallingly, the United States asserts that this supposed waiver negates one of Walgreens' defenses against the government's claims, but also insists that Walgreens may not test the validity of that assertion through discovery. The United States' subjective and unilateral view that the materials sought "are not likely to be of significant value adjudicating [sic] the issues in dispute" fundamentally does not comport with the low bar that Rule 26 erects for establishing discoverability on relevance grounds. Indeed, the United States *itself* has satisfied this standard by putting the purported CMS "waiver" at issue in this case.

Walgreens' request for internal communications regarding the Release and the supposed TennCare "waiver" easily clears the low bar of Rule 26, because such communications likely will reveal, among other things, the scope of the waiver; whether the state accurately represented its intended coverage restrictions when it applied for the waiver; whether CMS understood that the waiver would permit TennCare to restrict access to care purely on cost-savings grounds; and whether the waiver, as the government now characterizes it, would have been within CMS's power to grant. Indeed, there are serious questions about the propriety of such a waiver, if it was issued, as the government is characterizing it in this litigation. Section 1315(a) of the Social Security Act

> requires that the state project [for which a waiver may be granted] be an "experimental, demonstration or pilot" project. The statute was not enacted to enable states to save money or to evade federal requirements but to "test out new ideas and ways of dealing with the problems of public welfare recipients." . . . A simple benefits cut, which might save money, but has no research or experimental goal, would not satisfy this requirement.

*Beno v. Shalala*, 30 F.3d 1057, 1069 (9th Cir. 1994). The United States itself has demonstrated that standard was not met by taking the position that the "waiver" here was a cost-saving measure. *See* ECF 42 at 8 (arguing that CMS's "Special Terms and Conditions . . . attendant to TennCare's Waiver Letter . . . memorialize the expectation that TennCare will consider cost as a factor when determining which drugs to cover"). The United States cannot now block discovery into the facts

4

underlying its own claims, particularly when those facts could establish the invalidity of the purported waiver.[1]

Finally, the United States' excuse that the document requests impose an "extremely high burden" because CMS and Medicaid are "massive organization[s]" misses the mark. ECF 118 at 6. By that standard, CMS and Medicaid would never have to produce any responsive documents, in this case or any other. Indeed, Walgreens is a large organization too, but Walgreens has complied with its discovery obligations since the inception of this case. The United States would never tolerate a party claiming that its size excuses it from searching for relevant and responsive documents, and this Court should not either.

## II. The United States' Representations That It Is Searching for Responsive Communications with TennCare Related to the Release Are Not Credible

Its concession that the Release is relevant is only the start of the United States' stunning refusal to abide by its discovery obligations. In the Opposition, the United States makes the following statement about its failure to produce discovery related to the Release:

> The United States has not yet produced any communications with TennCare related to Release No. 172 because in the course of its review and collection efforts to date, the United States has not identified any such communications. Discovery remains ongoing, and the United States will identify any such communications that it may find and either produce them or assert any applicable privilege.

ECF 118 at 5. In other words, the United States concedes that CMS's communications with TennCare regarding the Release are relevant; otherwise, it would not be searching for those

---

[1] Elsewhere in the Opposition, the United States attempts to disown the Release altogether, using the same distorted reading of the underlying legal requirements for prior authorization programs and formularies that failed to persuade Judge Jones to grant the government's motion for reconsideration in the Western District of Virginia case. *See* ECF 118 at 7; Order, *United States & Commonwealth of Va. v. Walgreen Co.*, No. 21-cv-00032-JPJ-PMS (Mar. 3, 2022), ECF 49. This tactic by itself justifies discovery into the development of that document and the supposed TennCare "waiver," so that Walgreens can explore whether the United States' assertions are merely a litigation position.

5

communications. Despite this, many months after its production deadline passed, the United States still refuses even to explain where it has searched, what remains to be searched, or how long that process is expected to take. This is unacceptable. Walgreens has been seeking documents from the United States regarding the Release for over *nine months*. The United States' efforts to locate and produce those documents should have been completed months ago. The emptiness of the United States' supposed efforts is highlighted by the fact that the *State of Tennessee* already has identified and produced documents referring to communications between CMS and TennCare related to the Release. *See* Ex. 1 (TN-0110319) (referring to a December 18, 2015 call between CMS and TennCare regarding formulary and drug coverage issues); Ex. 2 (TN-0190406) (referring to "ongoing internal and CMS discussions related to" Tennessee's use of the supposed "waiver" in relation to the drug formulary requirements of Section 1927 of the Social Security Act, and to a specific meeting between TennCare and CMS scheduled to occur on or around April 22, 2016 on this issue). The fact that such communications exist reinforces the commonsense notion that CMS likely possesses its own communications and other materials bearing on the same issue.

### III. The United States' Explanation for Its Email Production Deficiencies Fails

Putting aside materials related to the Release, the United States concedes—as it must—that it is required to search for and produce responsive emails. That said, the United States has yet to produce *a single email* responsive to *any* Walgreens request, relating to the Release or otherwise. The United States' assertion that it "has not yet identified emails in its possession that are relevant and responsive within the scope of Rule 26(b)(1)," ECF 118 at 9, is yet another attempt to kick the can down the road and run out the clock on discovery. The United States cannot escape responsibility by asserting that "*most if not all* of the *most relevant and responsive emails* are in the possession of" Tennessee and its contractors. *Id.* at 8 (emphases added). First off, the United States is a party to this litigation and has discovery obligations of its own. It cannot palm those

6

obligations off on others based on nothing more than its own say-so. Second, even its own words—emphasized above—suggest that at least some of the most relevant and responsive emails are not in the possession of Tennessee or its contractors. The Court should order the United States to explain why it has failed to produce any responsive emails, demonstrate that it has actually searched custodians (including by providing a list of all custodians searched and the date ranges of those searches), explain what it has left to search and how long that process is expected to take, and—at long last—produce responsive emails.

**IV.    The United States' Arguments Regarding Preservation-Related Discovery Fail**

The United States' argument that "discovery on discovery" is improper absent "a factual basis for questioning a party's preservation and collection efforts," ECF 118 at 10, is the product of misreading and misapplication of the cited caselaw. Contrary to the United States' assertion, *John B. v. Goetz* did *not* adopt the *Sedona Principles* as binding or even advisory in this Circuit. *See* 531 F.3d 448, 459-60 (6th Cir. 2008). In fact, that case did not discuss the *Sedona Principles'* supposed prohibition on "discovery on discovery" at all. *See id.* The United States misconstrues the other cases it cites, too. *Thomas Nelson* explicitly tied the requirement of "a preliminary showing of spoliation" to the production of "litigation hold letters." 2015 WL 13729725, at *6 (M.D. Tenn. Dec. 1, 2015). Here, Walgreens is not seeking the United States' litigation hold letters. *Beaudry* actually *credited*, for purposes of preservation-related discovery, what it called a mere "*potential* issue of spoliation in light of the plaintiff's assertions of missing *or incomplete* data production." 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013) (emphases added).[2]

---

[2] Similarly, in *Shufeldt*, the court did not hold that a preliminary showing of spoliation is necessary for "discovery on discovery," but rather simply that the showing of spoliation there was *sufficient* to justify discovery into the adequacy of a particular party's preservation efforts. *See* 2020 WL 1532323, at *10 (M.D. Tenn. Mar. 31, 2020).

7

Here, the United States' incomplete document productions create a potential issue of spoliation that Walgreens is entitled to probe in discovery. Finally, in *Commins*, the court merely found that a preservation-related deposition was premature because the party seeking it had not yet specified deposition topics. 2018 WL 3186983, at *9 (W.D. Ky. June 28, 2018). The court explicitly held open the possibility of a deposition in the future if the seeking party "still feel[s] that [the responding party] is withholding or refusing to produce relevant documents and information." *Id.* at *9 n.8. That is *exactly* what has occurred here: the United States has refused to produce relevant materials and, in light of that refusal, Walgreens is seeking non-privileged facts regarding the United States' preservation efforts.

V.  **The United States' Arguments Regarding the Reilly Case File Fail**

Walgreens will be prejudiced if forced to take Reilly's deposition (currently scheduled for June 2-3, 2022) without the case file documents in hand, and every day of delay in their production prejudices Walgreens' ability to defend against the government's absurd vicarious liability theory. The United States does not deny that the Reilly case file is relevant. To the contrary, the United States believes (wrongly) that this case is "straight-forward" in light of Reilly's guilty plea. ECF 118 at 1-2. Instead, the United States protests that it has produced various "example" categories of documents "obtained in the course of its investigation." ECF 118 at 13. The Federal Rules generally require production of *all* responsive documents, however, not just handpicked "examples" of responsive documents, and the United States offers no principled reason to depart from that standard.

Next, the United States says it needs Court approval to produce Reilly's presentence report and psychological evaluation. *Id.* The United States has had *over nine months* to seek any such approval, and apparently has done nothing. Prior to Walgreens' Motion to Compel, the United States never informed Walgreens that it believed it needed Court approval. Walgreens respectfully

8

requests that this Court order the United States to produce the Reilly presentence report and psychological evaluation, and in that process provide any necessary approval for such production.[3]

Finally, the United States asserts a blanket refusal to produce Reilly case materials on privilege grounds, but offers nothing to justify that assertion. The best the United States can muster is that the TBI case file remains open and so "it is appropriate to preserve the government's right to assert all available privileges." ECF 118 at 13-14. First of all, the formality of a case file being "open" does not foreclose discovery of documents that were in the government's possession for *years* before it filed this Action. The United States has not asserted that it or any other authority has an ongoing criminal investigation of this matter, and presumably any such investigation that was underway ended, at the latest, when Reilly pled guilty in October 2016. Second, the United States' failure to itemize its privilege claims falls short of the burden on the party asserting privilege to sufficiently demonstrate the grounds for privilege over each item withheld to allow the requesting party to evaluate the claim. Again, the United States has had many months to do this. The Court should end this nonsense and order the United States to produce its privilege log within a week of the filing of this brief.

## VI. Remaining Issues

The United States fails to justify any of the remaining production failures Walgreens catalogued in the Motion.

*First*, the United States' complaint regarding Interrogatory No. 3 is unavailing. Ordering the United States to respond to Interrogatory No. 3 along the lines Walgreens set forth in its Motion is within this Court's broad discretion to regulate discovery. *See Tarleton v. Meharry Med. Coll.*,

---

[3] The government notably does not dispute Walgreens' claim that the relevant documents will be sufficiently protected from public disclosure by the Protective Order in this case (ECF 52) or an appropriate supplemental protective order. *Compare* ECF 116 at 19 *with* ECF 118 at 13.

9

717 F.2d 1523, 1535 (6th Cir. 1983) (noting district courts' "sound discretion . . . to regulate discovery practice"). And the identities of individuals ultimately responsible for the information in the United States' interrogatory responses are not privileged.

*Second*, regarding RFP No. 17, the United States merely "stands on its objections." ECF 118 at 14. That stance is a concession that Walgreens' arguments are meritorious.

*Third*, regarding "other" Hepatitis C drugs, the United States' efforts to bar discovery in support of Walgreens' defense tied to the Release fail for all the reasons articulated above.

## VII. Conclusion

For the foregoing reasons, Walgreens respectfully requests that this Court grant the Motion and order the relief set forth therein, namely the following:[4]

1. Make complete productions of all responsive documents related to the Release and the alleged TennCare waiver, by no later than seven days after the entry of an order granting the Motion;

2. immediately produce information to Walgreens regarding the United States' document search and collection efforts, including the hit counts for Walgreens' search terms and a complete list of custodians whose documents have been searched;

3. produce emails to Walgreens on a rolling basis, to be completed by no later than seven days after the entry of an order granting the Motion;

4. answer Interrogatory 15 no later than seven days after the entry of an order granting the Motion;

5. amend its responses to Walgreens' other interrogatories related to document preservation, and produce all responsive, non-privileged documents in response to Walgreens' RFPs related to document preservation, by no later than 14 days after the entry of an order granting the Motion;

6. amend its responses to Interrogatory 3, Interrogatories 4 and 5 (to reflect its statements in the Opposition), and Interrogatory 8, immediately;

---

[4] Walgreens has refined these requests slightly in light of the United States' representations in the Opposition related to the timing of its production of a privilege log, as well as to Interrogatories 3, 4, 5, and 8 and RFP 16.

7. produce the Reilly case file within 14 days of an entry of an order granting the Motion;

8. produce documents immediately in response to RFP 17, and in relation to RFP 16, state where it searched before determining "it does not have any responsive information," ECF 118 at 14;

9. produce a privilege log no later than a week after the filing of this Reply Brief; and

10. apply the Hepatitis C medication parameters set forth in Walgreens' discovery requests (as the parties have agreed to modify those parameters), rather than the narrower parameters reflected in the United States' responses and objections to the requests.

Date: May 27, 2022

Clint J. Woodfin #016346
SPICER RUDSTROM, PLLC
800 S. Gay Street, Suite 1400
Knoxville, TN 37929
Tel.: (865) 673-8516
cwoodfin@spicerfirm.com

Respectfully submitted,

/s/ *Reed Brodsky*
Reed Brodsky* (NY Bar #2843019)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-5334
rbrodsky@gibsondunn.com

Jonathan M. Phillips* (DC Bar #989061)
Michael R. Dziuban* (DC Bar #1034156)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036-5306
Tel.: (202) 955-8500
jphillips@gibsondunn.com
mdziuban@gibsondunn.com

*Attorneys for Defendant Walgreen Co.*
**Admitted pro hac vice*

# CERTIFICATE OF SERVICE

       I hereby certify that on May 27, 2022, the Clerk of Court was requested to file the foregoing Reply Brief. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ *Reed Brodsky*
Reed Brodsky

*Attorney for Defendant Walgreen Co.*